1  Michael Mortimer [SBN 164092]
   A.T. Kippes [SBN 171688]
2  THE BUSINESS LITIGATION GROUP LLP
   351 California Street, Suite 500
3  Mail to: Post Office Box 2342
   San Francisco, CA  94126-2342
4
   (415) 398-5050; Telecopier: (415) 398-5088; sanfrancisco@att.net; businesslitigationgroup.com
5
   Attorneys for Plaintiff Landis Maez
6

7

8             UNITED STATES DISTRICT COURT

9            Northern District of California - San Francisco Division

10

11

12 | Landis Maez,                                | Case No.: **C-04-00790 JSW (EDL)**

13 |         Plaintiff,

14 |     v.                                       | **OPPOSITION to Defendants' Motion for Summary Judgment and for Partial Summary Judgment.**

15 | ChevronTexaco Corporation; Chevron U.S.A. Inc.; Chevron Energy Solutions, L.P.

16

17 |         Defendants.                          | **Honorable Jeffrey S. White**
                                                    **June 24, 2005, 9:00 a.m.**
                                                    **Dept. 2, 17th Floor**
18

19

20                    **PREFATORY STATEMENT**

21      Plaintiff Maez's case is a non-complex wage claim arising out of Defendants reneging on

22 a promise to pay Plaintiff around $390,000 in commission wages on a $29 million sale that

23 Plaintiff made in 2003.  The rest of Plaintiff's claims are causes of action deriving from

24 Defendants' bad acts related to their not wanting to pay him the commissions owed.

25      Plaintiff's case is unique amongst employment law cases because his causes of action

26 will mainly be proven through documentary evidence.  Simply put, the documents in this case

27 speak for themselves, despite Defendants' valiant efforts in their Motions to ignore, talk around,

28 or explain away what Plaintiff's 750 pages of hard evidence prove.

Although Defendants did not provide proper notice of the grounds upon which they have moved for Summary Judgment, Plaintiff will nevertheless address each of Defendants' "Analysis" sections contained in their Points & Authorities. Additionally, although the burden has NOT shifted to Plaintiff to show that there are triable issues, Plaintiff will produce facts and evidence showing the dispute should proceed to trial.

Regarding a logistical matter, *Hollingsworth Solderless Terminal Co. v. Turley (9th Cir. 1980) 622 F.2d 1324, 1335, fn. 9,* and *FDIC v. New Hampshire Ins. Co.* (9th Cir. 1991) 953 F.2d 478, 484, recognize that objections to a moving party's evidence can be made either at the hearing or beforehand. Due to the number of objections Plaintiff will be making, for the convenience of the Court and parties, Plaintiff requests to separately submit written objections <u>after</u> Plaintiff receives Defendants' anticipated reply brief. At that time, for the convenience of the Court, Plaintiff will also submit a proposed order.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 25, 2004. The Case Management Order issued in July 2004 contained a March 2005 discovery cut-off date.

In compliance with his Rule 26 Initial Disclosure obligations, Plaintiff provided Defendants with over 750 pages of documents, including e-mails, letters, contracts, memoranda, copies of web pages, and other substantive material. Other than his Rule 26 disclosures, during the short seven-month period that discovery was open,[1] Plaintiff did not conduct other formal discovery because his documents proved his case and he saw no reason to educate or alert the Defendants as to the holes in their predicted defense.

Defendants' formal discovery was minimal. Defendants took a one-day deposition of Plaintiff. The only other deposition Defendants conducted was a half-day deposition of a third party witness in Maine, on the issue of Defendants giving Plaintiff bad employment references.

As to written discovery, Defendants propounded mostly generic requests asking Plaintiff

---

[1] Defendants misstate that there was a two year period within which Plaintiff could, but did not, conduct formal discovery. [Def. Pts. & Auth., p. 3: 2-6].

OPPOSITION - Summary Judgment Points & Authorities – *Maez v. ChevronTexaco, et al.* **C-04-00790 JSW (EDL)**

- 2 -

1  to "tell us all facts" and "identify all documents" to support each allegation of his Complaint.
2  Defendants never filed any motions to compel on their written discovery.
3  There were some time-consuming battles on various discovery motions. Defendants filed
4  for a discovery protective order [granted by Judge LaPorte on March 29, 2005, after the close of
5  discovery]. Defendants also filed a $6,800 Discovery Sanctions Motion and a Motion to
6  Compel Plaintiff's treating doctor to turn over his records to Defendants. Judge LaPorte denied
7  both Motions on April 19, 2005.
8  In violation of Judge White's Orders, Defendants continue to conduct discovery, even
9  though the discovery cut-off date was March 4, 2005. [Defendants' conduct in this regard will
10  be addressed in separate proceedings].

**OBJECTION TO DEFENDANTS' "STATEMENT OF RELEVANT FACTS"**

12  Plaintiff objects to Defendants' nine-page "Statement of Relevant Facts" contained in
13  their Points & Authorities on pages 3 through 12. Defendants' version of the facts consist of
14  inaccuracies, unsupported representations, attorney argument, and statements otherwise
15  inadmissible on evidentiary grounds.
16  Moreover, since Defendants did not weave their Statement of Relevant Facts into their
17  Analysis or argument, their Statement of Relevant Facts is irrelevant. Defendants' motive
18  appears to attempt to convince this Court to weigh the evidence in Defendants favor and to grant
19  their Motions. Defendants' acts are improper because motions for summary judgment are not a
20  substitute for trial.
21  So to not muddy the waters, Plaintiff will not retort Defendants' Statement of Relevant
22  Facts. Instead, Plaintiff will focus on meeting his burden as the non-moving party to
23  Defendants' Summary Judgment Motions.

**BRIEF RENDITION OF FACTS**

25  There are three Defendants in this case: ChevronTexaco Corporation, Chevron U.S.A.
26  Inc., and Chevron Energy Solutions L.P. At one time or another, these businesses were
27  individually or collectively Plaintiff's employer. To avoid confusion, Plaintiff will refer to each
28  Defendant as "Defendants," "the Company," or "Chevron."

This case is about Defendants refusing to pay Plaintiff his $390,000 in earned incentive wages. Plaintiff alleges that Chevron owed Plaintiff these wages pursuant to an employer-revised incentive plan that Chevron imposed on its sales force in July 2003. Adding interest, waiting-time penalties, and statutory attorney fees and costs, Plaintiff's "hard dollar" claims total approximately $688,000. Plaintiff's attorneys fees and costs to date total about $203,000.

Plaintiff's additional claims are straightforward. Simply put, Plaintiff's evidence at trial will establish that when Plaintiff asked Defendants to pay him his wages of $390,000, Defendants fired him. Defendants did this to avoid paying Plaintiff his wages and in retaliation for Plaintiff: a) demanding that he be paid; b) not letting the issue die; and c) filing a formal Company grievance. Based on Defendants' wrongful conduct, Plaintiff filed a public policy wrongful termination claim and a separate breach of contract cause of action [that is, contracts or agreements related to payment of monies to Plaintiff and Chevron's promises to Plaintiff that if he filed a formal grievance, Chevron would not retaliate against him].

## SUMMARY OF ARGUMENT

## ARGUMENT

***Chevron Fails to Meet Its Burden On Summary Judgment.***

Despite the lesser burden a moving party for summary judgment must satisfy in federal courts [that is, in comparison to the moving party's heavier burden in California state courts], <u>the initial burden of demonstrating the absence of any genuine issue of material fact nevertheless rests with the moving party</u>. See *SRI Int'l v. Matsushita Elec. Corp.*, (Fed. Cir. 1985) 775 F.2d 1107, 1116. Summary judgment is proper only after <u>the moving party has demonstrated</u> that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Union States Gypsum Co. v. Nat'l Gypsum Co.*, (Fed. Cir. 1996) 74 F.3d 1209, 1212.

Defendants do not meet their burden because triable issues of fact still exist in this case. Plaintiff will show that Defendants <u>cannot prevail</u> on their Motions because Defendants have NOT demonstrated to this Court that no reasonable juror would find by a preponderance of the evidence in favor of Plaintiff on each of his claims.

*Chevron DID NOT Shift the Burden to Plaintiff.*

Defendants know that Plaintiff's evidence establishes triable issues. Despite this, Defendants' papers do not acknowledge, discuss, distinguish, or deal with the record that favors Plaintiff going forward. <u>Defendants' failings result in the burden NOT shifting to Plaintiff to provide facts showing that there are genuine issues for trial</u>.

Although Defendants have not shifted the burden to Plaintiff to prove that his case should proceed to trial, Plaintiff will nevertheless address Defendants' arguments contained in their Points & Authorities "Analysis" sections. Plaintiff will also submit evidence establishing that summary judgment is NOT proper in this case and that triable issues of fact remain in this case.

*Standard of review - The Court Views Evidence In Favor Of The Non-Moving Party.*

When the court evaluates the non-moving party's evidence, all inferences are drawn in favor of the non-moving party. Moreover, all the non-moving party's allegations that conflict with those of the moving party are to be taken as true. *Anderson v. Liberty Lobby, Inc.*, (1986) 477 U.S. 242.

*The Moving Party Must State Specific Grounds for Its Motion.*

A party seeking summary judgment bears the responsibility of informing the district court and the opposing party of the specific grounds for its motion. *Katz v. Children's Hosp. of Orange County* (9th Cir. 1994) 28 F.3d 1520, 1534. The court and non-moving party are not required to sift through a moving party's papers to figure out on what bases the moving party believes it is entitled to summary judgment.

Defendants have not given proper notice nor stated the specific grounds on which Defendants base their Motions. Plaintiff objects and moves to strike Defendants' Motions on the grounds that Defendants have completely failed to provide Plaintiff and this Court with proper notice. [See Defendants' Notice of Motion for Summary Judgment where Defendants did not specify on what bases they are bringing their Motions].

*Chevron Has Waived its Right to Introduce New Evidence in its Reply.*

In their Points & Authorities, Defendants have not discussed pertinent facts, law and issues related to this Motions, nor have they provided admissible evidence for the Court to

consider or for Plaintiff to rebut. Defendants have waived raising the issues and are estopped from introducing new evidence in their anticipated reply brief.

### RESPONSE TO DEFENDANTS' ISSUES AND EVIDENCE

*[NOTE: The below sections and captions correspond to those in Defendants' "Analysis" sections beginning on page 12 of Defendants' Points & Authorities. This appears the simplest and best way to respond to the issues Defendants raise in their papers].*

**Defendants Argue:**

A. Plaintiff's Employment Claims Should Be Dismissed In Their Entirety As Against Chevron Corporation, as it was Not His Employer.

**Plaintiff Responds:**

**(1) Defendants have failed to demonstrate to this Court the absence of material facts related to ChevronTexaco being dismissed from the case:**

Defendants' request is a motion to dismiss rather than a request for partial summary judgment. On a motion to dismiss, Defendants were required to provide admissible evidence showing that ChevronTexaco was not Plaintiff's employer or not liable for payment of Plaintiff's wages under parent, respondeat superior, ratification, joint and several liability, or some other legal theory.

Defendants' legal analysis for dismissing ChevronTexaco from the case is completely without merit. Defendants have not provided argument or authority discussing the employment relationship that existed between Defendants and Mr. Maez. All Defendants do is cite to nice-sounding general principles and out-of-context quotes.

The only "evidence" Defendants provide to support their assertion that ChevronTexaco was not Plaintiff's employer is Jeffrey Jacobs' Declaration. Mr. Jacobs purportedly asserts that Plaintiff was employed by Chevron ES, a division of Chevron U.S.A. Inc. [Def. Pts. & Ath, p. 13: 3-4, citing Jacobs Decl. ¶ 2].

Defendants' reference to Mr. Jacobs' Declaration constitutes a misrepresentation because he says absolutely nothing about the Parties' employment relationship, either in his Paragraph 2

nor elsewhere in <u>his entire Declaration</u>. He also does not testify about the legal relationship between the Chevron companies.

Since Defendants have not provided evidence or argument to support their motion to dismiss ChevronTexaco from the case, Defendants' motion to dismiss ChevronTexaco from the case is properly DENIED.

**(2) Plaintiff produces specific facts evidencing ChevronTexaco remaining in the case:**

Filing a summary judgment motion "constitutes a tacit admission on the part of the movant that the court has personal jurisdiction, that venue is properly laid there, and that the court should dispose of the case on the merits." *Misch v. Zee Enterprises, Inc.* (9th Cir. 1989) 879 F.2d 628, 631-632. Nevertheless, Plaintiff produces the following specific facts showing there are genuine issues of fact relating to ChevronTexaco remaining in the case. Some of the evidence includes:

[See Dec. of Ptf. Maez, ¶ __; Exhibit __] Plaintiff's business cards showing ChevronTexaco as his employer. Plaintiff's business cards; Printout of Defendants' Website; Press Releases; ChevronTexaco; Inserts included with Plaintiff's March 2004 check; Defendants' Release of All Claims; ChevronTexaco Confidentiality Agreements.

Plaintiff has provided a great deal of evidence showing that ChevronTexaco held itself out as Plaintiff's employer, was a controlling parent of subsidiary companies, including CES, or that ChevronTexaco ratified the wrongful acts of others under its control. On these issues, Plaintiff's evidence supports the material allegations contained in his Complaint.

Defendants' failings have not shifted the burden to Plaintiff to provide facts showing that there are genuine issues for trial. Defendants have WAIVED raising new issues or introducing new evidence in their anticipated reply brief. Defendants Motion is properly DENIED.

**Defendants Argue:**

B. The Undisputed Evidence Demonstrates Plaintiff Worked And Resided In Arizona And As A Matter Of Law Cannot Bring An Action Under The California Labor Code For Unpaid Wages.

**Plaintiff Responds:**

**(1) Defendants have failed to provide legal authority or evidence to prevail on their argument that Plaintiff cannot bring an action for unpaid wages under the California Labor Code.**

Although Defendants appear to be raising a jurisdictional question, Defendants are actually raising a choice-of-law issue. Defendants have conceded, acquiesced, or waived challenging California as the choice-of-law in this case. Having litigated the case under California law, Defendants should not now be allowed at this late date to argue that California law should NOT be applied to Plaintiff's substantive claims.

In diversity actions, the state law creating the right sued upon governs issues such as the elements of the action, measure of damages, applicable defenses, etc. *Bank of Calif. v. Opie* (9th Cir. 1981) 663 F.2d 977, 980. The only argument Defendants make to support their assertion that Plaintiff's Labor Code causes of action should be dismissed is that Plaintiff lived and worked out of his house in Arizona.

Other than this inconclusive tidbit of information, Defendants have completely failed to provide any legal or factual basis for this Court to discontinue applying California substantive law on Plaintiff's entire case. Furthermore, by not raising the issue, Defendants have waived raising new issues related to choice-of-law and are estopped from discussing them in their anticipated reply brief.[2]

Although Defendants' do not provide argument or authority to support their request that California law should <u>not apply</u> to Plaintiff's Labor Code claims, yet they cite California law <u>should continue to apply</u> to Plaintiff's non-statutory claims. [See Defs. Pts. & Ath. where throughout they cite to California substantive law in support of their Motions for Summary Judgment on Plaintiff's non-statutory claims].

Defendants' argue that California's Labor Code should not apply to Plaintiff' case. Defendants refer the Court to passages contained in a DLSE Policy Manual and cite *Tidewater*

---

[2] Interestingly, while Defendants argue that California law does not apply to Plaintiff's Labor Code claims, they do not present any argument or authority as to which state's laws should apply if California's does not.

*Marine Western* as authority for their proposition that California's Labor Code protections do not apply to Plaintiff. Defendants miscite and misrepresent the law on this subject.

It is true that the DLSE may adopt "regulations and rules of practice and procedure." (Cal. Labor Code § 98.8). However, any rule of general application that purports to implement or interpret the law is subject to the Administrative Procedures Act rulemaking procedures. *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 576. Defendants have NOT provided authority that the Policy Manual sections they cite complied with APA procedures.

As to the "general enforcement principles" Defendants cite, in *Tidewater*, the California Supreme Court specifically held that the DLSE policies and procedures were void due to the Agency's failure to comply with the APA's rulemaking procedures. Contrary to what Defendants represent to the Court, the *Tidewater* court specifically said "We are not prepared to hold that IWC wage orders apply to *all* employment in California, and *never* to employment outside California." *Id.* at 578. Defendants misinterpret the law by stating that DLSE provisions are valid authority, when in fact the California Supreme Court declared the DLSE enforcement policy void. Furthermore, Defendants misrepresent the *Tidewater* holding by claiming court held "Wage Orders [only] apply to residents employed exclusively with the boundaries of California." In reality, the Supreme Court declined to address the question in *Tidewater*.

Defendant employers should not be allowed to litigate a case and then strategically raise a choice-of-law issue. Defendant employers should not be allowed to pick and choose which state's laws will apply to various causes of action contained in a plaintiff-employee's complaint.

Defendants waived making a choice-of-law challenge because throughout the case Defendants have invoked, relied upon, or cited California law in the following: 1) Defendants' Summary Judgment Motions; 2) Defendants Motion for a Discovery Protective Order; 3) Defendants' Motion to Compel Subpoena Compliance; and 4) Defendants advising Plaintiff of his privacy rights under California Notice to Consumer CCP provisions.

**(2) The Parties agreed to a choice of law provision stating that California substantive law should be applied in this case:**

Perhaps most significantly on the choice-of-law issue, Defendants have completely failed to inform the Court that the Parties agreed to a California choice-of-law provision. For example, the Parties signed Agreements that contained California choice-of-law provisions. See Dec. of Maez, ¶11 & 60; Exhibit ___; [See Exhibit _____ , Maez Answers to Interrogatory; Maez Depo, p 344: 3-9].

Courts have held that if the parties agreed that a particular state's laws will govern disputes that might arise under a contract, agreement, or understanding, the parties' choice of law should be enforced, provided the chosen law bears a "substantial relationship" to the parties or their transactions, or there is "any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Sup.Ct. (Seawinds Ltd.)* (1992) 3 Cal.4th 459, 466.

Since 2001, as the contracting party with the superior bargaining power, Defendants have imposed on Plaintiff a California choice-of-law for any disputes that may arise. Now, in mid-2005, Chevron wants this Court to ignore the Parties' Agreements and understandings so to limit their exposure to waiting-time penalties and other California Labor Code liability. Chevron should not be allowed to pick and choose on which of Plaintiff's claims California law applies.

**Defendants Argue:**

**C. Plaintiff Has No Competent Evidence To Prove That He Was Not Timely Paid Wages That He Had Earned. C. 1. Chevron ES paid all of the money that Plaintiff was owed when it was owed.**

**Plaintiff Responds:**

**Defendants have failed to demonstrate to this Court the absence of disputed material fact related to calculation of wage payments to Plaintiff.**

The primary issue on Plaintiff's Labor Code and breach of contract claims is how much money Defendants owe Plaintiff under the July 2003 Incentive Plan or contract between the Parties. Defendants' Points & Authorities takes two full pages setting forth facts to support their defense that on Plaintiff's $29 million Sunkist projects sales, Defendants only owed Plaintiff about $17,000 in commissions. In contrast, since July 2003, Plaintiff has consistently maintained that the correct calculation is about $390,000. [July 2003 is when Defendants distributed the Salesman Incentive Plan to Plaintiff and others].

Despite Defendants' assertion that the facts set forth in their Points & Authorities are undisputed [thereby entitling Defendants to summary judgment], in actuality, Defendants' factual rendition constitute an admission that the wage calculation issue is in serious dispute. Because material factual disputes exist concerning terms of the incentive compensation plan/contract between the Parties, summary judgment on these issues is inappropriate.

Defendants have not provided the Court with legal analysis as to why the Court should weigh and compare the Parties' respective version of events related to this particular contract/wage issue. In other words, Defendants have failed to provide legal support for their contention <u>that as a matter of law</u> their $17,000 number is correct and entitles them to summary judgment. Plaintiff respectfully submits that it would be improper to weigh the facts on whose calculation is correct on monies owed under the July 2003 Incentive Plan. On these grounds, Defendants Motion for Partial Summary Judgment on this issue is properly DENIED.

**-- Plaintiff produces the following specific facts showing that there remains a factual dispute as to the calculation and payment of monies owed:**

(1) On July 14th of 2003, a new Sales Incentive Plan was introduced to Plaintiff and other members of the sales team by Puneet Verma, Plaintiff's supervisor and Sales Director. [See Dec. of Ptf. Maez, ¶ __; Exhibit ___].

(2) Mr. Verma explained in a conference call with all of his direct reports that the new Incentive Plan previously faxed to each of the salesmen, was a way for each salesman to make a lot more commission. Plaintiff noted that the Plan included a $250,000 cap the commissions that could be earned on any one project [See Dec. of Ptf. Maez, ¶___].

(3) After getting the new plan, Mr. Verma and Plaintiff computed Plaintiff's commissions on Plaintiff's soon to be completed Sunkist cogen projects [See Dec. of Ptf. Maez, ¶ ; Exhibit ___]

(4) Mr. Verma told Plaintiff that the Sunkist commissions were to be specially computed for a "lump-sum." Mr. Verma told Plaintiff this was necessary because Jim Davis (Chevron Energy Solutions' President), contrary to the terms of the new incentive plan, did not want to

extend Plaintiff's commission payments out over the ten years of revenue service for each of the two Sunkist contracts. [See Dec. of Ptf. Maez, ¶ ; Exhibit ___]

(5) At the time that Mr. Verma and Plaintiff calculated Plaintiff's Sunkist commissions to total $390,000. Mr. Verma did not exclaim surprise or express that the amount was incorrect or too high.

**C. 2. Defendants Argue:** Any delay in Plaintiff receiving money due to him was not Chevron's fault, as Plaintiff has refused to accept payment of his 2003 incentive compensation.

**Plaintiff's Response:**

**-- Defendants have failed to demonstrate to this Court the absence of disputed material facts related to Defendants not making wage payments and as to Plaintiff's alleged refusal to accept payment:**

Despite Defendants' assertion that the facts set forth in their Points & Authorities are undisputed on the secretion and delay issues, in actuality Defendants' factual rendition constitutes an admission by Defendants there is a material dispute as to whether or not Plaintiff secreted himself from receiving Defendants' payment or that the blame lies with him as to any delay in his receipt of wages. Because there exists a material factual dispute related to Plaintiff "hiding out," so to speak, and the legitimacy of Defendant not paying Plaintiff all wages due, at time of his termination or beyond, summary judgment of the issues is properly DENIED.

**(b) Plaintiff produces the following specific facts showing that there remains a material factual dispute as to the reasons for delay in payment of Plaintiff's wages, the amount paid, and as to whether or not Plaintiff secreted himself or otherwise refused to accept Defendants' wage or money payments:**

[See Dec. of Ptf. Maez, ¶__; Exhibit ___]

**C.3. Defendants Argue: They are not liable for waiting time penalties as there is no evidence of bad faith in any delay in payments to Plaintiff.**

**Plaintiff Responds:**

Plaintiff's Labor Code § 203 waiting-time penalties cause of action arises from Defendants' failure to pay all wages due Plaintiff at time of his termination and at later times. Whether or not an employer "willfully" failed to pay wages is a question of intent. A motion for

summary judgment on one's intent is not appropriate in cases where motive or intent is a necessary element of proof. One's motive or intent is typically a jury question.

Defendant has not sufficiently demonstrated that the Labor Code 203 penalty cause of action is appropriate for summary judgment. Defendants rendition of facts purportedly showing their lack of bad faith indicates that they want the Court to accept their version of events as more credible than Plaintiff's; therefore, the Court should rule as a matter of law that Defendants are entitled to summary judgment on this claim. Of course, what the Defendants are really asking the Court to do is to improperly weigh the "he said/she said" facts and declare Defendants the victor.

Defendants cite the Barnhill case to imply that between Defendants and Mr. Maez there existed a good faith dispute on wages not paid so they are off the hook on imposition of penalties. Defendants' citation to Barnhill is inaccurate and misplaced. Actually, Barnhill supports Plaintiff's position that "willful" in the context of a failure to pay wages does NOT mean the employer knew the wages were owed, but maliciously withheld payment. Rather, Barnhill construed Labor Code § 203's "willful" standard to mean 1) the employer had the duty to determine if wages were earned and owing; and 2) that the employer's action or inaction caused the wages not to be paid. Specifically, the Court noted:

> [T]o be at fault within the meaning of the statute, the employer's refusal to pay **need not be based on a deliberate evil purpose to defraud** workmen of wages which the employer knows to be due. **As used in section 203, "willful"** *merely* **means that the employer intentionally failed** or refused to perform an act which was required to be done.

Barnhill at p. 8. [emphasis added].

The Barnhill appeals court concluded that waiting time penalties in that case were inappropriate because the employer withheld wages in good faith under circumstances **where the law was uncertain**. Barnhill v. Robert Saunders & Co., (1981) 125 Cal.App.3d 1, 8. The Barnhill court determined: "Although we have concluded that the trial court correctly determined that appellant had no such right [to setoff wages against a debt owed by the former

1 employee], at the time the state of the law [on setoffs] in that regard was not clear." <u>Barnhill</u> at
2 p. 8. [emphasis added].

3       Nowhere in Defendants' Motion do they assert or discuss that *the law* related to payment
4 of Mr. Maez commission wages was uncertain. Defendants have not produced any evidence
5 showing that as a matter of law it did NOT have a duty to pay the wages. Defendants have not
6 produced any evidence or credible argument that there existed between the parties a good faith
7 dispute over the obligation to payment of earned wages. Defendants have not produced
8 admissible evidence showing its failure to pay wages was "unintentional" within the meaning of
9 the "willful" standard set for in Labor Code § 203 and cases construing that provision, including
10 <u>Barnhill</u>.

11       Defendants bases to defeat Plaintiff's Labor Code penalty cause of action is unsupported
12 in law and in fact. Defendants Partial Summary Judgment Motion on Plaintiff's Labor Code
13 waiting-time penalty cause of action is properly DENIED.

14   **-- Defendants have failed to demonstrate to this Court the absence of disputed material facts related to whether or not a jury may award of Labor Code waiting-time penalties in this case:**
15
16

17 1) Defendants' evidence in support of its Motion on Plaintiff's Labor Code penalty claim
18 cause of action is **inadmissible** [hearsay, lacks foundation, and the Declarants were incompetent
19 to provide evidence on the penalty issue]; 2) Defendants say that after they terminated Plaintiff,
20 that he secreted himself thereby causing the delay in sending Plaintiff his wages. While this has
21 a nice ring to it, Defendants have not presented any evidence indicating in any manner
22 whatsoever that Plaintiff was hiding out or otherwise not around to receive payment. In any
23 event, for summary judgment purposes, it is a fact question on whose version of events will be
24 believed, therefore, Defendants' evidence on the issue is irrelevant and immaterial. Defendants'
25 evidence simply proves that there is a factual dispute on intent.

26   (b) Plaintiff produces the following specific facts showing that there remains a material factual dispute as to whether or not a jury may award Plaintiff Labor Code waiting-time penalties:
27
28

1  -- [See Dec. of Ptf. Maez, ¶__ 2; Exhibit ___] - Never changed address;
2  Payments due at time of termination; Payment in June 2004 not received; Never any notice up
3  until May 2004 that he was to receive additional amounts; Request to sign release in Dece 2003,
4  never any mention he still had wages coming.

### D. Defendants Argue: Plaintiff's Cause Of Action For Breach Of Contract Is Barred By His Admission That He Was An At-Will Employee.

**Plaintiff's Response:**

Defendants argue that Plaintiff's third cause of action for breach of contract should be dismissed on summary judgment because Plaintiff was an at-will employee. Whether or not Plaintiff was an at-will employee for purposes of his breach of contract claims is irrelevant.

Plaintiff's breach of contract cause of action does not include a claim for breach of a guaranteed term of employment. The third cause of action includes a claim that Defendants breached the July 2003 Incentive Plan. Plaintiff's breach of contract cause of action also includes a claim against Defendants for breach of their written promise to Plaintiff that if he filed an internal STEPS grievance, Defendants would not retaliate against him. As discovery in this case has disclosed, soon after Plaintiff filed his grievance claims, Defendants terminated his employment.

It is a question for the jury to decide if Defendants breached the promises set forth in their STEPS grievance policy. Therefore, summary judgment on Plaintiff's third cause of action for breach of contract is properly DENIED.

-- **Plaintiff produces the following specific facts showing that there remains a material factual dispute as to whether or not Defendants breached various agreements, promises and contracts between Plaintiff and Defendants.**

-- [See Dec. of Ptf. Maez, ¶; Exhibit ___], STEPS Policy. I noted on the policy it said I would not be retaliated against if I filed a STEPS grievance.

-- [See Dec. of Ptf. Maez, ¶__; Exhibit ___], first complained.

-- [See Dec. of Ptf. Maez, ¶__; Exhibit ___], complained again.

-- [See Dec. of Ptf. Maez, ¶__; Exhibit ___], was warned by Jacobs.

-- [See Dec. of Ptf. Maez, ¶__; Exhibit ___], was warned by Verma.

-- [See Dec. of Ptf. Maez, ¶__; Exhibit ___], filed formal STEPS grievance.

-- [See Dec. of Ptf. Maez, ¶__; Exhibit ___], Verma calls Plaintiff at home to fire him.

**E. Defendants Argue:** There is no evidence that plaintiff was laid off in retaliation for filing a STEPS grievance. Plaintiff fails to identify a public policy upon which his "protected activity" was based and as a result his claim for wrongful termination must fail.

**Plaintiff's Response:**

Defendants expend almost two pages in their Points & Authorities misstating the law and facts relating to public policy wrongful termination actions. Reduced to its essence, Defendants mistakenly think that Plaintiff demanding payment of his wages does not constitute a protected activity under California law. Defendants are clearly in error, so much so that Plaintiff will not address Defendants' paragraphs point by point.

Although employment contracts are generally terminable at-will, California courts have for 25 years recognized a narrow exception to this rule: "(A)n employer's traditional broad authority to discharge an at-will employee may be limited by statute . . . or by considerations of public policy." *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172.

While an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy. *Silo v. CHW Med. Found.* (2002) 27 Cal.4th 1097, 1104. In retaliation claims, the employee's remedy in such cases is not merely an action for breach of the employment contract but also a common law tort action for wrongful discharge: "A wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief." *Tameny v. Atlantic Richfield Co.*, supra, 27 Cal.3d at 176. A *Tameny* claim may be asserted if the employer's decision was motivated in part by an unlawful reason. *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1378.

Defendants are correct that the existence of a pertinent public policy is crucial to a *Tameny* claim. *Tameny v. Atlantic Richfield Co.*, supra, 27 Cal.3d at 169. A four-part test is utilized in determining whether a particular policy can support a common law wrongful discharge claim. The policy in question must be based on either a constitutional or statutory

provision; "public" in the sense that it "inures to the benefit of the public" rather than merely serving the interests of the individual; well established at the time of discharge; and substantial and fundamental. *Stevenson v. Sup.Ct. (Huntington Mem. Hosp.)* (1997) 16 Cal.4th 880, 894.

Where Defendants are grossly incorrect on the law is their argument that Plaintiff questioning or demanding payment of wages does not constitute a protected activity and that when retaliated against for questioning or demanding payment of wages from the employer, that such cannot support a *Tameny* cause of action.

Prompt payment of wages due an employee (required by Labor Code § 216(a) is a fundamental California public policy, serving the interest of the public at large, not merely the interest of the employee to whom the wages are due. *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147. In *Gould* the employee was allegedly discharged to avoid paying him accrued commissions. Also see *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 574 where the Court recognized a *Tameny* claim for an employee discharged in retaliation for complaining about employer's withholding of pay.

Defendants erroneously argue that *Gould* does not apply to Plaintiff's case because his complaint to management was on "how" the commissions were being calculated. According to Defendants, this was different than the *Gould* case where, again according to Defendants, the employee was complaining about wages not being paid. Defendants' entire point is misleading.

*Gould* specifically upheld Plaintiff's *Tameny* cause of action on the basis that the *Gould* plaintiff alleged he was fired by the Company so they could avoid paying him earned commissions. *Gould* at 1146. This is precisely one of the reasons Plaintiff Maez is pursuing a *Tameny* action against the Defendants.

**E. 2-3 Defendants Argue**: Chevron terminated Plaintiff's employment for legitimate, nondiscriminatory business reasons. Plaintiff has no evidence that his alleged "protected activity" caused his termination or that Defendants' were a pretext for retaliation.

**Plaintiff's Response:**

Just as in other parts of Defendants' Motion, on Plaintiff's retaliation claim Defendants want the Court to accept as true its version of events as to why they terminated Plaintiff.

OPPOSITION - Summary Judgment Points & Authorities – *Maez v. ChevronTexaco, et al.* **C-04-00790 JSW (EDL)**

- 17 -

However, just as Plaintiff has argued above, where the evidence shows that Plaintiff's version of events in NOT based on mere speculation or suspicions, it is improper to weigh the evidence and determine whose version of events is more believable.

    -- Plaintiff produces the following specific facts showing that there remains a material factual dispute as to whether or not Defendants retaliated against Plaintiff for his demanding payment of wages owed to him:

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. When Defendants imposed a new commission plan on its sales force in July 2003, Plaintiff and his supervisor calculate his wages on his Sunkist projects to total approximately $390,000. Plaintiff's supervisor does not exclaim surprise nor express that the total is unreasonable or incorrect.

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. Plaintiff is informed that Defendants have a problem paying the wages that Plaintiff is expecting. Plaintiff engages in dialogue with management and attempts to negotiate payment.

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. Vice President Jeffery Jacobs warns Plaintiff not to make waves about payment of wages.

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. Puneet Verma, Plaintiff's supervisor, warns Plaintiff about making noise about payment of wages.

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. Before a national meeting, Jacobs again warns Plaintiff and other salespeople that when meeting with the new president Mahoney that they better not bring up anything about non-payment of wages.

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. Having not received any response from Defendants, Plaintiff files an informal grievance and states that if nothing is done, he will file a formal STEPS grievance.

    -- [See Dec. of Ptf. Maez, ¶ __; Exhibit ___]. Plaintiff reads Defendants' grievance procedures and notices that the policy assures him that he will not be retaliated against if he files a formal STEPS grievance.

    -- [See Dec. of Ptf. Maez, ¶ __ Exhibit ___]. Having not received a response from Defendants about the Sunkist commissions, Plaintiff files a formal STEPS grievance in October 2003.

OPPOSITION - Summary Judgment Points & Authorities – *Maez v. ChevronTexaco, et al.* C-04-00790 JSW (EDL)

- 18 -

-- [See Dec. of Ptf. Maez, ¶___; Exhibit ___]. Three weeks later, Plaintiff receives a call from his supervisor Puneet Verma. Mr. Verma tells Plaintiff he is fired effective December 13, 2003.

-- [See Dec. of Ptf. Maez, ¶___; Exhibit ___]. Before Mr. Verma's termination call, Plaintiff did not have any notice or indication that he was in danger of being fired.

-- [See Dec. of Ptf. Maez, ¶___; Exhibit ___]. Prior to being terminated, Plaintiff's most recent review was excellent, he received a pay raise, Chevron awarded him stock options based on performance, and gave him a trophy award for his securing the $29 million dollar Sunkist project.

-- [See Dec. of Ptf. Maez, ¶___; Exhibit ___]. At the time Defendants fired Plaintiff, and after that date, Defendants never told Plaintiff about other employment opportunities within the Company. When Plaintiff was terminated, the Company gave him a release of all claims to sign, which if he did, he would receive about $17,000 in severance pay.

-- [See Dec. of Ptf. Maez, ¶___; Exhibit ___]. At no time did anyone tell Plaintiff that if he signed the release agreement that Defendants would still pay him on his Sunkist projects. In fact, because Plaintiff was not willing to lose his Sunkist project commissions, Plaintiff did not sign the release agreement so to get the much needed severance pay. Had Defendants told Plaintiff that he would not have been releasing his claim for wages if he signed the release, he would have signed it so that he could get the severance.

-- [See Dec. of Ptf. Maez, ¶___ Exhibit ___]. Plaintiff is aware that Chevron is alleging that the reason for his termination was because Defendants were getting out of the BOO project business. Defendants proffered reason is false because after they fired Plaintiff, Defendants tried to secure the business on one of Plaintiff's accounts. Additionally, Plaintiff noted that Defendants published on their website a successful completion of a BOO project in 2004 for the United States Army.

-- [See Dec. of Ptf. Maez, ¶___; Exhibit ___]. Plaintiff also found out that in 2004 the same recruiter who had facilitated Plaintiff's employment with Chevron was advertising Plaintiff's position with Chevron on his website.

### F. Defendants Argue: Plaintiffs Cause Of Action For Declaratory Relief Is Barred On The Grounds That There Is No Controversy For The Court To Decide.

Plaintiff's request for declaratory relief is proper because a controversy continues to exist regarding on the rights, duties, and obligations of the parties pursuant to Defendants' Proprietary and Confidentiality Agreement that the parties signed in 2001.

Defendants are correct in stating that the opportunity for Defendants to file a cross claim against Plaintiff for the breach of the Confidentiality Agreement has most likely run. However, the Agreement is arguably still in force and Plaintiff believes that it is still proper for this Court to declare the parties right, duties and obligations pursuant to said Agreement.

### Conclusion

Plaintiff has shown through admissible evidence and argument that all of his claims should proceed to trial. Plaintiff also requests that this Court should also rule on the merits of his declaratory relief action.

After ruling on Plaintiff's evidentiary objections, Defendants' papers lack any legal or factual support. Defendants' Motions are properly denied.

Dated: June 3, 2005

The Business Litigation Group LLP

_____
Michael Mortimer
Attorneys for Plaintiff Landis Maez