IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDIS MAEZ, | No. C 04-00790 JSW |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CHEVRON TEXACO CORP., CHEVRON U.S.A. INC., CHEVRON ENERGY SOLUTIONS L.P., | |
| Defendants. | |

Now before the Court is the motion of Defendants Chevron Corp. (formerly ChevronTexaco Corp.), Chevron U.S.A. Inc., and Chevron Energy Solutions L.P. (collectively "Defendants") for summary judgment or, in the alternative, for partial summary judgment. Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.

**FACTUAL BACKGROUND**

In this action, Plaintiff challenges Defendants' termination of his employment and seeks to collect wages allegedly owed to him pursuant to an incentive compensation plan. Plaintiff was hired by Defendants[1] as a sales manager in December 2002, and on November 18, 2003, Defendants informed him that they were terminating his employment. (Declaration of Jeffrey Jacobs ("Jacobs Decl."), ¶ 4; Declaration of Puneet Verma ("Verma Decl."), ¶ 13.)

---

[1] Chevron Corporation argues that it was not Plaintiff's employer. The Court will address Chevron Corporation's position below.

1 Plaintiff lived in Arizona while he worked for Defendants, but his entire customer base 2 was in California and the sole focus of his job was on generating sales in California. 3 (Declaration of Landis Maez ("Maez Decl."), ¶ 15; Declaration of M.D. Moye ("Moye Decl."), 4 Ex. B (Deposition of Landis Maez ("Maez Depo.") at 134:17-135:4).) According to Plaintiff, 5 Defendants located Plaintiff in Arizona to avoid the high cost of living in California. (Maez 6 Decl., ¶ 15.) Plaintiff traveled to California a couple of times every month for business. (Moye 7 Decl., Ex. B (Maez Depo. at 134:17-135:4).)

8 In 2003, Defendants adopted a new incentive compensation plan. (Jacobs Decl., ¶ 11.) 9 Much of the parties' dispute involves how Plaintiff's commissions for certain projects, 10 specifically the Sunkist projects, should have been calculated under this plan. On October 22, 11 2003, while Plaintiff was still employed by Defendants, he filed an internal grievance 12 complaining about how he thought Defendants were calculating his commissions for the Sunkist 13 projects under the 2003 incentive compensation plan. (Maez Decl., ¶ 52, Ex. 22.) Plaintiff 14 informed his supervisor, Dr. Verma, in early September 2003 that he was considering filing 15 such a grievance. (*Id*., ¶¶ 30-31.) On September 26, 2003, Dr. Verma told Plaintiff that Jeffrey 16 Jacobs, a senior vice-president with Defendants, needed to talk to Plaintiff to resolve the Sunkist 17 commissions' claim to ensure that Plaintiff would not file an internal grievance. (*Id*., ¶ 37.) 18 Several weeks later, Dr. Verma called Plaintiff and warned him not to do anything to bring 19 attention to himself because Dr. Verma had just heard from top management that they may react 20 by terminating Plaintiff. (*Id*., ¶ 51.) Defendants notified Plaintiff of their decision to terminate 21 his employment on November 19, 2003, less than one month after Plaintiff filed his internal 22 grievance. (Verma Decl., ¶ 13.)

23 Plaintiff's suit also addresses his alleged failure to be paid all of the commissions owed 24 to him under the 2003 incentive compensation plan on the Spa Casino project in September 25 2003. Although Defendants calculated Plaintiff's initial payment for this project to be $2,465, 26 which was 75 percent of the total commissions, they only paid Plaintiff $2,218.56. (Maez Decl., 27 ¶¶ 26- 27, 42-45, Exs. 9, 10, 17, 18.) Plaintiff claims that he has never been paid the remainder 28 of the commissions owed to him for this project, either the remainder of the initial 75 percent

2

payment or any of the residual 25 percent. (*Id*., ¶¶ 27, 45.) Plaintiff's grievance also addressed Defendants' failure to pay Plaintiff all of the commissions owed him for the Spa Casino project. (Maez. Decl., Ex. 22.)

**ANALYSIS**

**A.     Legal Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Evidentiary Objections**

As a preliminary matter, this Court addresses each parties' objections to the other's evidence. The Court overrules Defendants' objections to paragraphs 15, 27, 37, 45, 51, 56 and 61 of Plaintiff's declaration, and to Exhibits 9, 17 and 18 attached to Plaintiff's declaration. The remainder of the evidence to which Defendants and Plaintiff objected was not necessary to the

resolution of this motion. Therefore, the Court need not rule on the admissibility of such evidence at this time.

**C.  Defendants' Motion**

### 1. Questions of Fact Preclude Dismissing Chevron Corporation as a Defendant.

Defendants move for summary judgment to dismiss Chevron Corporation, formerly ChevronTexaco Corporation, as defendant in this action, arguing that it is not a proper party because it did not employ Plaintiff. Defendants did not submit any evidence demonstrating that Chevron Corporation is a separate legal entity from Chevron U.S.A. Inc. and Chevron Energy Solutions L.P., and that Chevron Corporation did not employ Plaintiff.[2] Plaintiff submitted documents which create a question of fact as to what relationship Chevron Corporation has with Chevron U.S.A. Inc. and Chevron Energy Solutions L.P., and whether Chevron Corporation employed Plaintiff. For example, a paycheck issued to Plaintiff appears to be paid by ChevronTexaco. (*See* Maez Decl., Ex. 44.) Therefore, the Court denies Defendants' motion on this ground.

### 2. Questions of Fact Remain as to Whether Plaintiff Worked in California.

Plaintiff represented at the hearing on Defendants' motion that his first claim entitled Violation of California Industrial Wage Orders Including Nonpayment of Wages is premised on California Labor Code §§ 200 and 202 and Industrial Wage Order No. 4-2001. His complaint also references California Labor Code §§ 206 and 206.5. Defendants contend that Plaintiff, as a non-California resident who worked in Arizona, cannot maintain claims under these statutory provisions or wage order. Despite Plaintiff's argument to the contrary, Defendants are not raising a choice of law issue. Rather, they are arguing that Plaintiff is not a proper plaintiff.

Under California law, there is a presumption against applying state laws extraterritorily to encompass conduct occurring in a foreign jurisdiction. *North Alaska Salmon Co. v. Pillsbury Council, Inc.*, 174 Cal. 1, 4 (1914); *Diamond Multimedia Systems v. Superior Court*, 19 Cal. 4th

---

[2] Paragraph two of Jeffrey Jacobs' declaration, cited by Defendants as support for its statement that Plaintiff was not employed by Chevron Corporation, only addresses Chevron Energy Solutions L.P. and does not actually mention the Chevron Corporation.

4

1036, 1060 n.20 (1999). California's intent to make an "act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *North Alaska*, 174 Cal. at 4 (internal quotes omitted). Nevertheless, here, it is not clear whether Plaintiff's employment and Defendants' subsequent alleged failure to pay wages occurred inside or outside of California.

Defendants rely on *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 577-78 (1996), to argue that California's wage and hour protections do not apply to persons such as Plaintiff, who, according to Defendants, lived and worked outside of California. In *Tidewater*, the California Supreme Court held that two wage orders applied to plaintiffs who lived and worked within California's boundaries. The Court noted generally: "The Legislature may have ... intended extraterritorial enforcement of ... wage orders in limited circumstances, such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day. On the other hand, the Legislature may not have intended ... wage orders to govern out-of-state businesses employing nonresidents, though the nonresident employees enter California temporarily during the course of the workday." *Id*. at 577-78. The Court specifically refrained, however, from holding that "wage orders apply to *all* employment in California, and *never* to employment outside California." *Id*. at 578 (emphasis in original). Moreover, the Court explicitly stated it was not expressing any opinion on whether wage orders apply to employees who work primarily outside of California's state law boundaries. *Id*. at 579. Accordingly, the exact scope of California's wage and hour laws is not clear.

Moreover, there are questions of fact regarding where Plaintiff worked and whether he would be considered a California employee for purposes of the wage and hour laws. Although it is undisputed that he lived in Arizona, Plaintiff presented evidence demonstrating that when he was a salesperson for Defendants his entire customer base was in California. According to Plaintiff, Defendants located him in Arizona in order to avoid the high cost of living in California, but the sole focus of his job was on power generation sales in California. (Maez

5

Decl., ¶ 15.) Even the evidence submitted by Defendants demonstrates that Plaintiff visited California a couple of times every month for business and that his entire customer base was in California. (Moye Decl., Ex. B (Maez Depo. at 134:17-135:4).) The existence of these questions regarding the scope of California law and the location of Plaintiff's employment precludes summary judgment on this issue.

        **3.**        **Questions of Fact Remain as to Plaintiff's Claim for Waiting Time Penalties**.

Defendants contend that Plaintiff was paid all his wages when they were due and that even if there was some delay, Defendants' good faith dispute as to the amount owed precludes Plaintiff from obtaining waiting time penalties under California Labor Code § 203 ("Section 203"). Pursuant to Section 203, an employer must pay penalties for willfully failing to pay wages in accordance with California Labor Code §§ 201, 201.5, 202, and 205.5 to an employee who is discharged or quits. The penalties accrue from the date the wages become due until they are paid or until an action is commenced. Cal. Labor Code § 203. Under this section, "willful" means "the employer intentionally failed or refused to perform an act which was required to be done." *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7-8 (1981) (emphasis deleted) (citing *Davis v. Morris*, 37 Cal. App. 2d 269, 274 (1940)). An employer's good faith belief that wages are not owed may negate a finding of willfulness. *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 782 (2002); *see also* Cal. Code of Regs. tit. 8, § 13520 (providing that an employer's good faith dispute, based in law or fact, that any wages are due will preclude imposition of waiting time penalties under Section 203).

Plaintiff submits evidence demonstrating a question of fact exists as to whether Defendants had a good faith dispute regarding whether they owed Plaintiff wages when he was terminated or soon thereafter. According to Plaintiff, he was paid only a portion of the commissions owed to him for the Spa Casino project in September 2003. Defendants calculated Plaintiff's initial payment for this project to be $2,465, which was 75 percent of the total commissions, but only paid Plaintiff $2,218.56. (Maez Decl., ¶¶ 26-27, 42-45, Exs. 9, 10, 17, 18.) Plaintiff claims that he has never been paid the remainder of the commissions owed to him for this project, either the remainder of the initial 75 percent payment or any of the residual 25

6

percent. (*Id.*, ¶¶ 27, 45.) Therefore, Defendants' motion for summary judgment on the issue of penalties under Section 203 is denied.[3]

### 4. Summary Judgment is Granted as to a Portion of Plaintiff's Breach of Contract Claim.

Defendants' move for summary judgment on Plaintiff's third claim for breach of oral or written agreements or promises, arguing that Plaintiff was an at-will employee and thus, cannot maintain a claim for alleged termination without good cause. Under his third claim, Plaintiff alleges that Defendants unlawfully terminated his employment without good cause. (Complaint, ¶ 69.) Nevertheless, Plaintiff represents in his opposition to Defendants' motion that this cause of action does not include a claim for termination without good cause, but rather, is premised on a breach of the 2003 incentive compensation plan and of a breach of Defendants' written promise not to retaliate against Plaintiff for filing an internal grievance. (Opp. at 16.) Based on Plaintiff's concession, the Court grants summary judgment on Plaintiff's third claim for breach of oral or written agreements or promises to the extent it is premised on Plaintiff's alleged termination without good cause.

### 5. Questions of Fact Remain as to Whether Plaintiff States a Viable Claim for Wrongful Termination in Violation of Public Policy.

To succeed on a claim for wrongful termination in violation of public policy, a plaintiff must demonstrate that his or her termination involved a matter "that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer; in addition, the policy must be 'fundamental,' 'substantial' and 'well established' at the time of the discharge." *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1090 (1992). Courts must therefore determine whether the employee's discharge "affects a duty which inures to the benefit of the public at

---

[3] Based on the fact that Defendants mailed Plaintiff a check to his address for commissions on the Sunkist projects in June 2004 that he never cashed, Defendants argue that Plaintiff secreted himself away to avoid payment, which would also preclude waiting time penalties under Section 203. In addition to the lack of evidence demonstrating that Plaintiff actively sought to avoid payment in June of 2004, the evidence regarding Defendants' alleged failure to pay Plaintiff wages on the Spa Casino project when he was terminated in November of 2003 precludes Defendants' motion for summary judgment on this ground as well.

7

1 large rather than to a particular employer or employee." *Foley v. Interactive Data Corp.*, 47
2 Cal. 3d 654, 669 (1988). Cases in which courts have found violations of public policy generally
3 fall into four categories: (1) refusing to violate a statute, (2) performing a statutory obligation,
4 (3) exercising a statutory right or privilege, and (4) reporting an alleged violation of a statute of
5 public importance. However, the tort of wrongful discharge in violation of public policy is not
6 limited to these four categories. *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th
7 1137, 1147 (1995); *see also Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 570-
8 71 (1998).

9 In *Gould*, the court held that terminating an employee in order to avoid paying earned
10 commissions and vacation pay would violate a fundamental public policy. *Gould*, 31 Cal. App.
11 4th at 1148. Similarly, in *Phillips*, the court held that retaliating against an employee for
12 asserting his or her right to be free from the employer's withholding of pay would violate a
13 fundamental public policy. *Phillips*, 63 Cal. App. 4th at 571.

14 Plaintiff alleges that he was fired to avoid paying him earned wages under the incentive
15 compensation plan and for filing an internal grievance complaining of Defendants' failure to pay
16 him his earned compensation. (Complaint, p. 5 and ¶ 74.) Although Plaintiff may have alleged
17 Defendants violated a public policy with respect to payment of earned wages, he has not
18 presented *any* evidence demonstrating Defendants terminated him to avoid paying him what he
19 earned. As the court noted in *Gould*, firing an employee to avoid paying earned wages seems
20 illogical because discharging an employee would not relieve an employer from its duty to pay.
21 On the contrary, discharging an employee causes the earned compensation to be payable
22 immediately pursuant to California Labor Code § 201. *Gould*, 31 Cal. App. 4th at 1148 n.3.
23 Nevertheless, because the issue in *Gould* was raised on a demurrer, the court accepted the truth
24 of the plaintiff's allegations. Here, even if the Court were to admit all of Plaintiff's statements
25 in his declaration and attached exhibits, Plaintiff has not presented any evidence which would
26 even create an inference that Defendants fired him to avoid paying him earned compensation.
27 Accordingly, Defendants' motion for summary judgment is granted to the extent Plaintiff's
28

8

claim for termination in violation of public policy is premised on his contention that Defendants terminated him to avoid paying him earned compensation.

However, to the extent Plaintiff's claim for wrongful termination in violation of public policy is premised on his contention that he was terminated in retaliation for complaining about not getting paid compensation he earned, his claim survives summary judgment. *Phillips* makes clear that being terminated in retaliation for complaining about a statutory right to be paid earned wages would violate a fundamental public policy. *Phillips*, 63 Cal. App. 4th at 574. In his grievance, Plaintiff complained about how Defendants were calculating his compensation for certain projects and how Defendants falsely asserted that Plaintiff had already been paid compensation for these projects. (Maez. Decl., Ex. 22.) Thus, Plaintiff's claim implicates a fundamental public policy.

Moreover, Plaintiff submits sufficient evidence from which a jury could determine that Defendants' proffered reason for terminating Plaintiff was pretext and that he was actually terminated in retaliation for filing a grievance. In September 2003, Plaintiff informed his supervisor, Dr. Verma, that he was considering filing an internal grievance regarding how Defendants were calculating his commissions on the Sunkist projects under the new incentive plan. (Maez Decl., ¶¶ 30-31.) According to Plaintiff, on September 26, 2003, Dr. Verma informed Plaintiff that Jeffrey Jacobs, a senior vice-president with Defendants, needed to talk to him to resolve the Sunkist commissions claim to ensure that Plaintiff would not file an internal grievance on the issue. (*Id*., ¶ 37.) On October 18, 2003, Plaintiff's supervisor, Dr. Verma, called him and warned him not to do anything to bring attention to himself because Dr. Verma had just heard from top management that they may react by terminating Plaintiff. (*Id*., ¶ 51.) Despite these warnings, Plaintiff filed an internal grievance on October 22, 2003. (*Id*., ¶ 52, Ex. 22.) Defendants notified Plaintiff that they were terminating his employment on November 18, 2003, less than one month later. (Verma Decl., ¶ 13.) When Plaintiff was fired, he was the top salesperson in his group. (Maez Decl, ¶ 61.) Both the timing of Plaintiff's termination and the preceding concerns and warnings Defendants' expressed regarding Plaintiff filing an internal grievance create a question of fact as to whether Defendants terminated Plaintiff's employment

9

in retaliation for Plaintiff filing an internal grievance. The Court therefore denies Defendants' motion for summary judgment on Plaintiff's claim for wrongful termination in violation of public policy to the extent it is premised on Defendants' alleged retaliation against Plaintiff for complaining about Defendants' failure to pay him his earned compensation.

### F. Summary Judgment is Granted as to Plaintiff's Claim for Declaratory Relief.

While employed for Defendants, Plaintiff signed Defendants' Proprietary and Confidentiality Agreement. In Plaintiff's fifth claim for declaratory relief, Plaintiff alleges a concern that Defendants may fabricate claims of misappropriation of trade secrets and of breaching the agreement. (Complaint, ¶¶ 84-97.) Defendants argue that summary judgment should be granted on Plaintiff's fifth claim for declaratory relief because there is no controversy before the Court. In response, Plaintiff fails to point to any evidence in the record demonstrating the existence of an actual case or controversy regarding the Defendants' Proprietary and Confidentiality Agreement "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991). Accordingly, the Court grants summary judgment as to Plaintiff's fifth claim for declaratory relief.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED as to:

(1) Plaintiff's third claim for breach of contract to the extent it is premised on Plaintiff's alleged termination without good cause;

(2) Plaintiff's fourth cause of action for termination in violation of public policy to the extent it is premised on Defendants' alleged attempt to avoid payment of wages; and

(3) Plaintiff's fifth claim for declaratory relief.

Defendants' motion is DENIED as to:

(1) dismissing Chevron Corporation as a defendant;

(2) Plaintiff's first claim for violation of California wage and hour laws;

(3) Plaintiff's second claim for penalties under California Labor Code § 203; and

(4) Plaintiff's fourth cause of action for termination in violation of public policy to the extent it is premised on Defendants' alleged retaliation against Plaintiff for complaining about Defendants' failure to pay him his earned compensation.

**IT IS SO ORDERED.**

Dated: July 13, 2005            /s/ Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE