1  HANSON, BRIDGETT, MARCUS, VLAHOS & RUDY LLP
   M. D. MOYE - 152871
2  DOROTHY S. LIU - 196369
   S. LANAY NEWSOM - 226393
3  333 Market Street, 21st Floor
   San Francisco, CA  94105-2173
4  Telephone:    (415) 777-3200
   Facsimile:    (415) 541-9366
5  mmoye@hansonbridgett.com

6  Attorneys for Defendants
   Chevron-Texaco Corporation, Chevron U.S.A. Inc. and
7  Chevron Energy Solutions, L.P.

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11 LANDIS MAEZ,                          No. C 040790 JSW

12              Plaintiff,               **DEFENDANTS' SUPPLEMENTAL**
                                         **MEMORANDUM OF POINTS AND**
13         v.                            **AUTHORITIES IN SUPPORT OF**
                                         **DEFENDANTS MOTION FOR**
14 CHEVRON-TEXACO CORPORATION,           **JUDGMENT ON PARTIAL FINDINGS**
   CHEVRON U.S.A. INC. AND               **[FRCP 52(c)]**
15 CHEVRON ENERGY SOLUTIONS, L.P.,

16              Defendants.

17                                       **Judge:          Hon. Jeffrey S. White**
                                         **Location:       450 Golden Gate Avenue**
18                                                       **Courtroom 2, 17th Floor**
                                                        **San Francisco, CA  94102**
19                                       **Trial Date:     October 11, 2005**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    LEGAL STANDARD ...................................................................................... 2

    A.     Plaintiff's Burden of Proof At Trial ................................................... 2

    B.     Arizona Law Governs Plaintiff's Claims Under California's Choice of Law Rules............................................................................................... 2

    C.     Plaintiff's Notice of Withdrawal of Motion to Amend Complaint Does Not Alter The Choice of Law Analysis and Applicability of Arizona Law to His Claims ................................................................................ 4

III.   ANALYSIS....................................................................................................... 4

    A.     Introduction and Summary ................................................................. 4

    B.     Defendants Are Entitled To Judgment On Plaintiff's First Cause of Action As He Has Not Proven That His Employment Was Subject To California's Wage And Hour Laws Or That He Was Not Paid Wages In Accordance With Arizona Law........................................................ 6

        1.     Plaintiff is not entitled to protection under the California Labor Code ................................................................................... 6

        2.     Plaintiff failed to prove that he was not timely paid earned incentive compensation in violation of either California law or Arizona law; for the same reasons, Plaintiff failed to prove that he was not paid in accordance with any Incentive Plans ........................................ 6

    C.     Defendants Are Entitled To Judgment On Plaintiff's Second Cause of Action As Plaintiff Failed To Prove That Any "Waiting Time Penalties" Are Due Under Either California Law Or Arizona Law..................... 11

    D.     Plaintiff Failed To Prove His Claims Under His Third Cause Of Action For Breach Of The 2002 STIP, Breach Of The 2003 Incentive Plan, Breach Of The LTIP, And Breach Of The STEPS Program ................................. 12

        1.     Plaintiff Failed To Prove That Chevron ES Breached The 2002 STIP Or The 2003 Incentive Plan ................................................ 13

        2.     Plaintiff Failed To Prove That Chevron ES Breached The LTIP ............. 13

        3.     Plaintiff Failed To Prove That Chevron ES Breached the STEPS Program ........................................................................................ 17

        4.     As Plaintiff has failed to prove a breach of contract by Defendants, Defendants are entitled to recover their reasonable attorney's fees.......... 18

    E.     Plaintiff Failed To Sustain His Burden Of Proving His Fourth Cause Of Action For Wrongful Termination In Violation Of Public Policy...................... 19

        1.     Because Plaintiff Was Not A California Employee, He Cannot Allege a Public Policy Claim Based On The California Labor Code ....... 19

        2.     Plaintiff Cannot Sustain A Claim For Wrongful Termination Under Arizona Law................................................................................... 20

# TABLE OF CONTENTS
### (continued)

Page

3.   Plaintiff Failed To Prove That His Layoff Was Because Of His Complaints About Incentive Compensation; Trial Testimony Overwhelmingly Established That Plaintiff's Layoff Was Due To Chevron ES's Reorganization Resulting From The Company's Change In Business Plans Following The Acquisition Of Viron ............ 20

IV.   CONCLUSION ............................................................................................. 22

DEFENDANTS' SUPP. MEM. OF PTS. AND AUTH. IN SUPPORT OF DEFS'
MOT. FOR JUDGMENT ON PARTIAL FINDINGS (C 040790 JSW)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acoustics, Inc. v. Trepte Construction Co.*
14 Cal. App. 3d 887 (1971)......................................................................... 12

*American Bank of Commerce v. Corondoni*
169 Cal. App. 3d 368 (1985).......................................................................... 3

*Arno v. Club Med Boutique Inc.*
134 F.3d 1424 (9th Cir. 1998)................................................................... 2, 3

*Associated Indem. Corp. v. Warner*
694 P.2d 1181 (Ariz. 1985)........................................................................ 18

*Clark v. Compania Ganadera de Cananea*
387 P.2d 235 (Ariz. 1963).......................................................................... 12

*Cronin v. Sheldon*
195 Ariz. 531 (1999).................................................................................. 20

*Director, Office of Workers' Comp. Programs v. Greenwich Collieries*
512 U.S. 267 (1994)..................................................................................... 2

*Erie Railroad Co. v. Tompkins*
304 U.S. 64 (1938)....................................................................................... 2

*Graham v. Asbury*
540 P.2d 656 (Ariz. 1975).......................................................................... 12

*In re Exxon Valdez*
270 F.3d 1215 (9th Cir. 2001)...................................................................... 2

*Jennings v. Marralle et al.*
8 Cal. 4th 121 (1994)................................................................................. 20

*Orr v. Bank of America*
285 F.3d 764 (9th Cir. 2002)........................................................................ 2

*Sanchez-Corea et al. v. Bank of America*
38 Cal. 3d 892 (1985)................................................................................ 17

*Schultz v. Commodity Future Trading Comm'n*
716 F.2d 136 (2nd Cir. 1983)..................................................................... 16

*Scully v. US WATS, Inc.*
238 F.3d 497 (3rd Cir. 2001) ..................................................................... 16

*Swanson v. Image Bank Inc.*
77 P.3d 439 (Ariz. 2003)............................................................................ 12

*Tameny v. Atlantic Richfield Co.*
27 Cal. 3d 167 (1980) .................................................................................. 2

*Woerth v. Flagstaff*
808 P.2d 297 (Ariz. Ct. App. 1990)............................................................ 18

**Statutes**

Arizona Revised Statute Section 12-341.01(A) .............................. 18, 19, 23

Arizona Revised Statute Sections 23-353 ....................................... 5, 6, 12

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3   Arizona Revised Statutes Section 23-1501 ................................................................... 20

4   Arizona Revised Statutes Section 23-352 ..................................................................... 12

    California Labor Code Section 201........................................................................... 5, 6
5
    California Labor Code Section 203....................................................................... 11, 12
6
    Federal Rules of Civil Procedure Section 15(a) ............................................................ 13
7
    **Other Authorities**
8
    28 U.S.C. §1332 ................................................................................................................ 2

9   California Industrial Wage Order 4-2001 ....................................................................... 5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUPP. MEM. OF PTS. AND AUTH. IN SUPPORT OF DEFS'
MOT. FOR JUDGMENT ON PARTIAL FINDINGS (C 040790 JSW)

## I.   INTRODUCTION

On October 17, 2005, Defendants Chevron Corporation (formerly Chevron-Texaco Corporation), Chevron U.S.A. Inc., and Chevron Energy Solutions, L.P. (collectively "Defendants") moved for judgment on partial findings of fact under Rule 52(c) of the Federal Rules of Civil Procedure.  Defendants renew and supplement that motion with the submission of this supplemental memorandum of points and authorities and move for entry of judgment against Plaintiff Landis Maez ("Plaintiff") on all causes of action, as Plaintiff has failed to sustain his burden of proof on any of his four remaining causes of action.[1]

In addition, Defendants address the following issues raised by the Court:

- Given Defendants' corporate structure and Plaintiff's status as an Arizona resident, what law is applicable to Plaintiff's breach of contract claims (e.g., the Spa Casino claim, the Sunkist claim, and the stock option claim)? (Record of Trial ("RT") 598:20-599:2) [*See,* Section II(B),  2:8-4:22, *infra*]

- Should Plaintiff's motion to amend, filed October 17, 2005, be allowed under F.R.C.P. 15? (RT 600:6-11) [*See,* Sections II(B) and II(C), 3:11-4:22, *infra*][2]

- Can Plaintiff prevail on his "stock option" claim given the testimony adduced by Defendants and Plaintiff's failure to present any evidence as to calculation of damages for the stock options he failed to exercise? (RT 600:12-601:3) [*See,* Section III(D), 13:16-16:8, *infra*][3]

- Can Plaintiff prevail on his breach of contract claim related to incentive compensation on the Spa Casino project given the testimony of Barbara Erickson and other evidence adduced by Defendants? (RT 601:5-7) [*See,* Sections III(B)(2)(c), 8:12-9:18; *infra*]

---

[1] Defendants also move for judgment based on arguments set forth in their brief filed October 14, 2005 regarding Plaintiff's status as a non-California employee.  (*See* Defs' Mem. of Pts. and Auth. In Response To The Court's Requested Briefing Re: The Effect Of Plaintiff's Non-California Employee Status, filed 10/14/05, hereafter "October 14 Brief")

[2] On October 24, 2005, Plaintiff filed a Notice of Withdrawal of his motion to amend the Complaint to plead Arizona law and has further indicated that he will file a new motion to amend to dismiss his "stock option" claim under the Third Cause of Action. ( *See,* Decl. of Dorothy S. Liu in support of Defs' Supp. Mem. Of Pts. And Auth. filed herewith.  ("Liu Decl.") ¶¶2, 3)  As we explain below, Plaintiff's Notice of Withdrawal has no effect as under the *Erie* doctrine the Court should apply Arizona law to his claims. (*See,* Section II(C), *infra*)

[3] As noted, Plaintiff has indicated that he will seek to amend to dismiss his "stock option" claim under the Third Cause of Action. ( *See,* Liu Decl. ¶3, Ex. A)  As we explain below, the Court should not permit Plaintiff to dismiss this claim to avoid imposition of judgment. (*See,* Section II(D)(2), 12:14-13:10, *infra*)

DEFENDANTS' SUPP. MEM. OF PTS. AND AUTH. IN SUPPORT OF DEFS'
MOT. FOR JUDGMENT ON PARTIAL FINDINGS (C 040790 JSW)

1217987.2

## II.    LEGAL STANDARD

### A.    Plaintiff's Burden of Proof At Trial.

The party asserting a claim has the burden of proving every essential element of its claim. *Director, Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 275 (1994). Plaintiff bears the burden of proving each claim by a preponderance of the evidence.  *See In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001).

### B.    Arizona Law Governs Plaintiff's Claims Under California's Choice of Law Rules.

This Court properly has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332.  Under the *Erie* doctrine,[4] a federal court sitting in diversity is required to apply state substantive law to the claims before it.  To determine which state's law to apply in a diversity action, a federal court must generally follow the choice-of-law rules of the forum state.  *Arno v. Club Med Boutique Inc.*, 134 F.3d 1424, 1425 (9th Cir. 1998); *see Orr v. Bank of America*, 285 F.3d 764, 772 n.4 (9th Cir. 2002) (Nevada law governs tort claim under California's choice of law rules where plaintiff was a resident of Nevada).

Plaintiff consistently has maintained in this case that California law applies to his First, Second, and Fourth Causes of Action, making clear that he seeks "waiting time penalties" unique to California's wage and hour laws under the California Labor Code, as well as attorney's fees under the California Labor Code and California's private attorney general statute.  (*See,* Compl. ¶¶36, 41, 47, 52-55, 59, 61, 63-65)  Likewise, in Plaintiff's Complaint, his Fourth Cause of Action for wrongful termination is styled specifically as "wrongful termination and discrimination in violation of California public policy."  (*See,* Compl. p. 16 and ¶79)  Plaintiff maintained the same position in his trial brief, explicitly identifying his wrongful termination claim as a "Tameny"[5] claim pursuant to California case authority.  Defendants, on the other hand, consistently have maintained that Plaintiff is not a California employee and therefore not subject to the protection of the California Labor Code. (*See,* October 14 Brief; *see also,* Defendants Motion for Judgment on Partial Findings of Fact ("October 17 Brief", III(A), pp. 4-5).

---

[4] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[5] *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980).

Notwithstanding the state of Plaintiff's pleadings, under *Erie* the Court should apply Arizona law to Plaintiff's claims.  California has adopted the "governmental interest" approach in choice of law cases.  *American Bank of Commerce v. Corondoni*, 169 Cal. App. 3d 368, 372 (1985).  Under this approach, the Court analyzes the respective interests of the states involved to determine whether the "interest" or policy underlying the law will be significantly furthered by its application to the case at hand.  *Id.*  The evidence at trial established that Plaintiff is a legal resident of Arizona who worked in Arizona, paid taxes in Arizona, and never resided or paid taxes in California during his employment with Chevron ES. (*See,* October 17 Brief III, p.4; *see also* RT 537:8-12)[6]  Under California's choice-of-law rules as the forum state, California has little or no interest in applying California law to this case.  *See Arno*, 134 F.3d at 1426.

Here, by Plaintiff's own admissions at trial, he is a legal resident of Arizona, worked out of his home in Phoenix, Arizona, paid state taxes in Arizona, had an Arizona driver's license, and never resided in California nor paid taxes in California during his employment with Chevron ES. (RT 19:4-7; 22:9-16; 301:3-4, 13-14; 345:25-346:11)  He testified that he traveled to California perhaps one time in August 2003, one time in September 2003, one time in November 2003, and perhaps more than once a month for a seven-month period (from January to July 2003). (RT 301:24-302:1, 6-8, 12-15; 304:3-10).  Unrefuted trial testimony from Plaintiff's supervisor Puneet Verma established that Plaintiff also conducted business in multiple states outside of California for Chevron ES, such as Arizona, Nevada, Missouri, Idaho, Kansas, and Washington, D.C.  (RT 520:14-521:19)  Plaintiff further admitted on cross-examination that he visited Boise, Idaho five or six times to conduct business for Chevron ES; that he visited Reno, Nevada two or three times to conduct business; that he visited Las Vegas, Nevada to discuss cogeneration opportunities; and that he visited Albuquerque, New Mexico a couple of times for conferences and conventions.  (RT 310:5-15, 23-25; 311:10-17; 311:25-312:3)  Finally, Plaintiff testified that he moved from Georgia to Arizona to be closer to "sales channels" (i.e., customers expected to offer business opportunities), three of which were located in Nevada and one of which was

---

[6] The choice of law issue is particularly germane to Plaintiff's Third Cause of Action for breach of contract, as Plaintiff's Complaint has not identified the state law under which it is pleaded.

1   located in California.  Plaintiff determined that Reno, Nevada provided the closest proximity to

2   his sales channels.  (RT 294:14-295:5; 305:8-307:22; Joint Exhibit ("Jt. Exh.") 200)

3       On these facts, the Court can conclude that California has no interest in attempting to

4   extend extraterritorial jurisdiction to apply the California Labor Code or California public policy

5   law or and California contract law to a legal resident of Arizona bringing a wage claim where he

6   resided and worked out of his home office in Arizona, paid taxes in Arizona, and who never

7   resided or paid taxes in California during his employment with Chevron ES.  In other words,

8   there is no "interest" or policy of California law that would be significantly furthered by its

9   application to the case at hand.

10  **C.     Plaintiff's Notice of Withdrawal of Motion to Amend Complaint Does Not Alter The Choice of Law Analysis and Applicability of Arizona Law to His Claims.**

11

12      Plaintiff initially filed a motion requesting that the Court allow him to plead that Arizona

    law applied to his claims.[7]  (Pla's Mot. to Amend, filed 10/17/05)  Rather than file an amended

13  complaint to plead claims applicable to his theories under Arizona law, however, Plaintiff last

14  week filed a Notice of Withdrawal of his Motion to Amend Plaintiff's Complaint to Conform to

15  Proof under FRCP 15(b).  (Pla's Notice of Withdrawal, filed 10/24/05)

16      But, the same choice-of-law issues remain regardless of whether or not Plaintiff amends

17  his complaint.  That is, the state of Plaintiff's pleadings does not change the facts established at

18  trial through witness testimony and documentary evidence.  The only consequence of Plaintiff's

19  failure to amend his complaint to conform to the evidence elicited at trial, or assert an alternative

20  legal theory, is to concede the applicability of the general choice of law rules under *Erie.*

21

22                      **III.     ANALYSIS**

23  **A.     Introduction and Summary**

24      Based on the testimony and evidence presented at trial, Defendants move for entry of

25  judgment in their favor against Plaintiff Landis Maez as to all of his remaining claims.

26  / / /

27  ───────────────────────
    [7]  In Plaintiff's companion filing on October 14, 2005 regarding the effect of a choice of law issue
28  on his public policy claim, Plaintiff noted that Arizona law permits recovery of attorney's fees for
    breach of contract.  (Pla's Br. on Questions by the Court, filed 10/14/05)

                                    -4-

1.    Under his First and Second Causes of Action Plaintiff has failed to prove that:

    a.    his employment was subject to the California Labor Code or California Industrial Wage Order 4-2001;

    b.    he was owed additional incentive compensation for the Sunkist Projects at the time of layoff, in violation of California Labor Code §201 or Arizona Revised Statutes section 23-353;

    c.    he was owed additional incentive compensation for the Spa Casino project at the time of layoff, in violation of California Labor Code §201 or Arizona Revised Statutes section 23-353;

    d.    he was owed a severance payment;

    e.    he was owed wages under the Long-Term Incentive Plan ("LTIP") (i.e., the stock options);

    f.    he was owed $24,000 in incentive compensation under the 2002 Short-Term Incentive Plan ("STIP"); or

    g.    Defendants violated California Labor Code section 206.5 or 206(a).

2.    Under his Third Cause of Action for breach of contract, Plaintiff has failed to prove that:

    a.    Defendants breached the STEPS policy;

    b.    Defendants breached their incentive plans;

    c.    Defendants breached the LTIP based on termination of his stock options or his failure to exercise them; or

    d.    Plaintiff has suffered any damages resulting from any alleged breach of the STEPS policy, any of the incentive plans, or of the LTIP.

3.    Under his Fourth Cause of Action, Plaintiff has failed to prove that, as a resident of Arizona he is covered by the California Labor Code and can maintain an action for wrongful termination in violation of public policy based on the California Labor Code.  Plaintiff further has failed to prove that he can maintain an action for wrongful termination under Arizona law.  In any event, Plaintiff failed to prove his wrongful termination claim under either California or Arizona law, as the undisputed trial testimony established that Plaintiff's layoff resulted from a legitimate business reorganization and the company's changing business plans.

/ / /

/ / /

/ / /

**B.    Defendants Are Entitled To Judgment On Plaintiff's First Cause of Action As He Has Not Proven That His Employment Was Subject To California's Wage And Hour Laws Or That He Was Not Paid Wages In Accordance With Arizona Law.**

1.    Plaintiff is not entitled to protection under the California Labor Code.

Plaintiff's primary claim in his lawsuit was that he was entitled to unpaid wages and "waiting time" penalties under California Labor Code.  Plaintiff bears the burden of proving that he was an employee working in California and has failed to present evidence by a preponderance to prove this threshold issue. (*See,* October 17 Brief, III(A), pp. 4-5)

2.    Plaintiff failed to prove that he was not timely paid earned incentive compensation in violation of either California law or Arizona law; for the same reasons, Plaintiff failed to prove that he was not paid in accordance with any Incentive Plans.

In any event, Plaintiff has failed to sustain his burden of proving that he was not timely paid any wages under either California Labor Code section 201[8] or Arizona Revised Statutes ("ARS") section 23-353 with respect to payment of wages following termination of employment. ARS section 23-353 provides,

> When an employee is discharged from the service of an employer, he shall be paid wages due him within three working days or the end of the next regular pay period, whichever is sooner."   ARS §23-353 (*see,* Appendix of Arizona Authorities, filed herewith).

This section of the Arizona code is the only Arizona law regarding the payment of wages relevant to Plaintiff's claims.

a.    By Plaintiff's Own Trial Testimony, He Was Owed No Incentive Compensation For The Sunkist Projects Under The Terms Of The 2003 Incentive Plan At The Time Of Termination.

The evidence adduced at trial demonstrates Plaintiff was owed no incentive compensation for the Sunkist Project at the time his employment terminated.  (*See,* October 17 Brief, III(B) pp. 5-7; *see also,* RT 539:19-540:3)[9]  Accordingly, his claim under the First Cause of Action related

---

[8]  California Labor Code section 201 provides that all wages earned and unpaid at the time of discharge of an employee are due and payable immediately.  Cal. Lab. Code §201.
[9]  In addition, Puneet Verma and Barbara Erickson provided unrefuted testimony that, as defined by the Incentive Plan, "project close-out" requires receipt of the entire contract amount (total revenue) from the customer, as well as a determination of all costs for construction of the project. (RT 496:1-18; 584:13-23; Jt. Exh. 206)  There is no evidence that the Sunkist Project achieved "project close out" before Plaintiff's employment ended, and in fact such closeout did not occur until 2004. (Jt. Exh. 257).

-6-

1   to the Sunkist Projects must fail.

2           b.      The Record Is Devoid Of Any Separate Agreement To Provide Plaintiff
3                   With Incentive Compensation For The Sunkist Projects.

4           In addition, the record is devoid of any evidence that Chevron ES made a separate

5   agreement with Plaintiff (either with or without consideration) to pay him a specified amount or

6   to pay him according to any specified terms or by a specified date with respect to incentive

7   compensation for the Sunkist Projects.  To the contrary, both Senior Vice President Jeffrey Jacobs

8   and Plaintiff's supervisor Puneet Verma testified that there was no such agreement.  (RT 553:4-

9   18; 557:24-558:2; 518:10-14)  Plaintiff alluded to a "tentative" agreement he made with Jacobs as

10  to the use of a certain net present value discount rate for a lump sum payment, as a possible

11  deviation from the Incentive Plan; however, Plaintiff's testimony entirely failed to describe the

12  terms of any such tentative agreement nor what consideration, if any, was offered in support of

13  any such tentative agreement.[10]  (See, RT 262:7-11)

14          In other words, Plaintiff failed to prove that he was owed any incentive compensation for

15  the Sunkist Projects under any separate agreement as of the date of his layoff in December 2003.

16  Rather, the undisputed record evidence and witness testimony of Senior Vice President Jeffrey

17  Jacobs, Human Resources Business Partner Barbara Erickson, and Plaintiff's supervisor Puneet

18  Verma demonstrate that, in fairness to Plaintiff, Chevron ES's Incentives Committee decided to

19  develop a methodology whereby Plaintiff could be paid full incentive compensation for the

20  Sunkist Projects without forcing Plaintiff to wait a minimum of 2 years for the initial payment of

21  incentive compensation and a minimum of 10 years before the final incentive payment, as called

22  for by the actual terms of the Incentive Plan.  (See, RT 493:1-495:18; 552:6-553:18; 560:23-

23  561:6; 588:10-24; 592:15-24)

24          To the extent that Chevron ES agreed to pay incentive compensation to Plaintiff, it did so

25  in accordance with the terms that it deemed appropriate.  The undisputed documentary evidence

26  and testimony demonstrate that:

27

28  _____
    [10]  President Jim Davis also rebutted Plaintiff's testimony testifying that he had no
    communications with Verma about Plaintiff's incentive compensation.  (RT 242:15-243:1)

- Chevron ES determined that its revenue on the Sunkist Projects for purposes of earning margin on which Plaintiff's incentive compensation would be paid was the monthly facility charges for the Main Plant and the Tank Farm, totaling $71,400 per month, and did not include "pass through" payments from the customer for costs incurred by Chevron ES on the customer's behalf. (Jt. Exhs. 240, 241; *see*, RT 427:12-429:4; 490:14-492:24; 504:24-507:12)

- Chevron ES determined that Plaintiff's total incentive compensation for the Sunkist Projects consistent with the principles of the Incentive Plan was $40,157, which was a total lump sum payment. (Jt. Exh. 257; *see*, RT 513:12-19)

- Chevron ES had paid Plaintiff $23,192 in 2002 incentive compensation under the STIP plan for the Sunkist Projects. (RT 51:22-53:19; 104:18-105:15; Jt. Exh. 257) This was corroborated by Puneet Verma's and Jeffrey Jacobs' testimony. (RT 516:24-518:6; 560:23-561:6; Jt. Exh. 253) Verma further testified that he had recommended a high rating for Plaintiff's 2002 STIP award because of Plaintiff's work on the Sunkist Projects, and that Plaintiff had not completed any other transaction in 2002. (RT 468:2-24; 469:24-470:6; 484:18-485:8)

- Chevron ES paid Plaintiff $16,965 in incentive compensation for the Sunkist Project in June 2004, which was the remainder of the total amount of incentive compensation paid to Plaintiff for the Sunkist Projects ($40,157). (Jt. Exhs. 233, 257; *see* RT 336:22-337:15)

Therefore, the unrebutted evidence shows that there were no wages due to Plaintiff under the terms of the Incentive Plan, nor under any separate side agreement. As this voluntary payment by Chevron ES was not owed at the time Plaintiff's employment terminated, there is no evidence of a violation of the California Labor Code requirement to pay wages upon termination or the Arizona statutory requirement to pay wages within three days of termination. Accordingly, consistent with the Court's tentative ruling, Defendants move for entry of judgment in their favor on the First Cause of Action as to the Sunkist projects, under both California law and Arizona law. (*See,* RT 539:19-540:18)

      c.    <u>Unrebutted Trial Testimony Established That Plaintiff Was Owed No Additional Incentive Compensation For The Spa Casino Project Under The Terms Of The 2003 Incentive Plan At The Time Of Termination.</u>

To prevail on a claim for additional incentive compensation for Spa Casino, Plaintiff had to prove that the Spa Casino project met all of the requisite criteria under the Incentive Plan, which included closing out at a margin that met the threshold (25%) under the Plan. (Jt. Exhs.

14, 206)  The evidence adduced by Plaintiff failed to establish that he was entitled to additional compensation for the Spa Casino project. (*See,* October 17 Brief, III(B), pp. 7-8)  Indeed, the evidence adduced by Defendants proves that Plaintiff was *not* entitled to additional compensation.

The unrefuted testimony of Barbara Erickson and the documentary evidence show that the Spa Casino project failed to meet the required 25% margin threshold to qualify automatically for incentive compensation under the Incentive Plan.  The Spa Casino project obtained only a 13% margin at the time when any initial 75% incentive payment would have become due (i.e. in September 2003 after receipt of 20% of the revenue).  (Jt. Exh. 207)  At this time, Chevron ES exercised its discretion to pay to Plaintiff some amount of incentive payment despite the low margin.  The Spa Casino project ultimately achieved only a 14.1% margin at final project close-out.  (Jt. Exh. 207; RT 581:15-583:12; 585:8-586:9)  Erickson, who was a member of the Incentives Committee, testified that the Incentive Plan required a project to reach a threshold 25% margin to qualify for incentive compensation, but that the Incentives Committee made a special exception for the Spa Casino project for the initial payments made to Plaintiff based on arguments advanced by Plaintiff's supervisor.[11]  (RT 580:9-13; 581:15-583:11; *see*, Jt. Exhs. 206, 207)

Defendants' undisputed evidence established that the final project close-out for Spa Casino did not occur until August 2005; and at that time the project still did not meet the threshold margin.  (RT 581:15-583:12; 585:8-586:9)  Therefore, if the Incentives Committee had elected again to exercise its discretion to pay the remaining 25% incentive payment for Spa Casino despite having missed the threshold margin by more than 10%, under the terms of the Incentive Plan such payment would not become due until 8 weeks following the close of that quarter in which the project was completed – i.e., December 2005.[12]  (*See,* Jt. Exh. 206)  The record unequivocally demonstrates, therefore, that no additional incentive compensation payment was due at the time of Plaintiff's termination in December 2003.

---

[11] Plaintiff claimed that he had been given "blanket dispensation" to achieve only a 10% margin for his projects to receive incentive compensation.  (*See* RT 153:10-19)  Erickson's credible testimony and the terms of the 2003 Incentive Plan directly refute Plaintiff's uncorroborated assertion.  (Jt. Exhs. 206, 207; RT 581:15-583:12; 585:8-586:9)

[12] Plaintiff admits that he was not eligible to receive compensation for the revenue generated after his employment with the company ended.  (RT 96:17-97:22)

DEFENDANTS' SUPP. MEM. OF PTS. AND AUTH. IN SUPPORT OF DEFS'
MOT. FOR JUDGMENT ON PARTIAL FINDINGS (C 040790 JSW)                    1217987.2

1    Consequently, there was no violation of the Incentive Plan and no violation of the

2    California Labor Code requirement to pay wages upon termination.  For the same reasons,

3    Plaintiff failed to prove any violation of the Arizona statutory requirement to pay wages within

4    three days of termination.  Accordingly, Defendants move for entry of judgment in their favor on

5    Plaintiff's First Cause of Action with respect to the Spa Casino project under both California and

6    Arizona law.

7              d.    Plaintiff Presented No Evidence At Trial To Support His Claim That He
                     Was Owed An Additional $24,000 Under The 2002 STIP Plan.
8

9    Plaintiff also brought a claim at trial for $24,000 under the 2002 STIP of alleged "six

10   months of earned incentive wages accrued from January to June 2003."  (RT 315:24-316:4; *see,*

11   RT 542:12-18)  Plaintiff appears to allege that Defendants' decision in July 2003 to retroactively

12   apply the 2003 Incentive Plan to January 2003 deprived him of additional compensation owed.

13   (RT 316:5-9)  Plaintiff failed to present any evidence that he was entitled to payment under the

14   2002 STIP after December 31, 2002, or that the STIP plan existed or was in effect in 2003.  (*See,*

15   October 17 Brief, III(B)(3), p. 8)  In addition, Verma provided credible and detailed testimony as

16   to the calculation of Plaintiff's 2002 STIP award.  (RT 472:2-474:8; 476:2-485:24)[13]

17   Accordingly, Defendants move for entry of judgment in their favor on the First Cause of

18   Action as to this incentive compensation issue under both California law and Arizona law.

19             e.    Plaintiff Presented No Evidence Of Breach Of The LTIP (Stock Options
                     Claim).
20

21                  (1)   Plaintiff failed to prove that he was not "paid wages" in the form of
                          his stock options at the time his employment ended.

22   At trial, Plaintiff claimed that he was owed "wages" in the form of vested stock options

23   alleging that they were "withdrawn" contrary to the terms of the Chevron Long Term Incentive

24   Plan ("LTIP").  (RT 151:17-25; 325:15-23)  Plaintiff presented no evidence that his stock options

25   were withdrawn before his employment terminated and he presented no evidence that he sought

26   to exercise the options at the time of his termination and was prevented from doing so.  (*See*

27

28   [13] As corroborated by Plaintiff's supervisor Puneet Verma, Plaintiff admitted that he booked no
     revenue in 2001 or 2002.  (RT 468:14-24; 469:24-470:6; *see* RT 104:18-105:15; 338:7-9)

-10-

1    RT 150:15-152:9; 325:15-328:13)  As a result, even assuming that his vested stock options were

2    wages, he cannot prove that they were "not paid" at the time of his termination as required by

3    Arizona or California law.  Accordingly, Defendants are entitled to entry of judgment in their

4    favor under both California law and Arizona law with respect to Plaintiff's allegation that he was

5    owed wages in the form of vested stock options.

6              f.    Plaintiff's Own Trial Testimony Established That He Was Not Owed Any
                     Severance Payment.
7

8         Plaintiff further claims that he was owed a severance payment.  However, Plaintiff's own

9    trial testimony that he declined to accept Defendants' offer of a severance package vitiates his

10   claim.  (*See,* October 17 Brief, III(B)(5), p. 10)  Therefore, Defendants move the Court for entry

11   of judgment in their favor under both California law and Arizona law with respect to Plaintiff's

12   allegation that he was owed a severance payment.

13             g.    Plaintiff Failed To Prove The Defendants Violated California Labor Code
                     Sections 206.5 and 206(a).
14

15        Plaintiff has failed to present any evidence that Defendants acknowledged that Plaintiff

16   was owed any additional, unpaid wages, Defendants move for entry of judgment in their favor as

17   to this claim.  (*See,* October 17 Brief, III(B)(6), pp. 10-12)

18   **C.   Defendants Are Entitled To Judgment On Plaintiff's Second Cause of Action As
          Plaintiff Failed To Prove That Any "Waiting Time Penalties" Are Due Under Either
19        California Law Or Arizona Law.**

20        Assuming *arguendo* that Plaintiff may proceed with his claim for "waiting time penalties"

21   under California Labor Code section 203,[14] his claim fails because he did not sustain his burden

22   of proving that he was covered by the California Labor Code or that any wages were due.  (*See,*

23   Sections III(B)(1) and III(B)(2), *supra*)  Therefore, no waiting time penalties were due under

24   California law.  (*See,* October 17 Brief, III(B), pp. 5-11)

25        Similar to California, an Arizona employer may not withhold or divert any portion of an

26   _____
     [14] California's Labor Code section 203 provides that "[i]f an employer ***willfully*** fails to pay . . .
27   any wages of an employee who is discharged or who quits, the wages of the employee shall
     continue as a penalty from the due date thereof at the same rate until paid or until an action
28   therefore is commenced; but he wages shall not continue for more than 30 days."  Cal. Lab. Code
     §203 (emphasis added).

                                        -11-

1   employee's wages "unless… there is a reasonable good faith dispute as to the amount of wages

2   due..."  ARS §23-352 (2005).  However, unlike in California, in Arizona, the Court's assessment

3   of a penalty based on an employer's unreasonable delay in the payment of wages is discretionary.

4   *Swanson v. Image Bank Inc.*, 77 P.3d 439, 443 (Ariz. 2003).

5          Here, as analyzed in the preceding sections, the evidence at trial amply demonstrated that

6   Chevron ES did not owe Plaintiff any additional wages or incentive compensation at the time of

7   termination in December 2003, and thus Plaintiff's claims to the contrary create no more than a

8   good faith dispute as to compensation due.  Because Plaintiff failed to sustain his burden of proof

9   as to the entitlement of any penalties under California or Arizona law, and because the trial

10  testimony and evidence established that there were credible grounds to support Defendants' view

11  that Plaintiff was owed nothing, a good faith dispute existed as to whether Plaintiff was due any

12  additional wages at the time of termination.  There are no grounds for penalties under ARS 23-

13  352 or California Labor Code Section 203.  Accordingly, Defendants move this Court for entry of

14  judgment as to Plaintiff's Second Cause of Action under both California and Arizona law.

15  **D.    Plaintiff Failed To Prove His Claims Under His Third Cause Of Action For Breach
16         Of The 2002 STIP, Breach Of The 2003 Incentive Plan, Breach Of The LTIP, And
         Breach Of The STEPS Program.**

17         Under Arizona law, to prevail on his breach of contract claim, Plaintiff must prove: (1) the

18  existence of a contract; (2) breach of that contract; *and* (3) the resulting damages.  *Graham v.*

19  *Asbury*, 540 P.2d 656 (Ariz. 1975); *Clark v. Compania Ganadera de Cananea*, 387 P.2d 235

20  (Ariz. 1963) (*see*, Appendix of Arizona Authorities filed herewith).  Plaintiff failed to sustain his

21  burden of proof at trial under Arizona law[15] on any of his various theories for breach of the 2002

22  STIP, breach of the 2003 Incentive Plan, breach of the LTIP, and breach of the STEPS grievance

23  program.

24  / / /

25  / / /

26  _____
[15] As analyzed in Section II(B) above, Arizona law governs Plaintiff's claims under California's
27  choice of law rules.  In any event, the same analysis applies under California law; to prevail on
    his breach of contract claim, Plaintiff must prove (1) the existence of a contract, (2) plaintiff's
28  performance or excuse for non-performance, (3) defendant's breach, and (4) resulting damages to
    plaintiff.  *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971).

-12-

1.   Plaintiff Failed To Prove That Chevron ES Breached The 2002 STIP Or The 2003 Incentive Plan.

As analyzed in Section III(B)(2), *supra,* Plaintiff failed to establish that he was owed any additional incentive compensation under the 2002 STIP or under the 2003 Incentive Plan for the Sunkist Projects, the Spa Casino project, or any other projects.  For the same reasons set forth in Section III(B)(2), *supra*, Plaintiff failed to prove that Defendants violated any terms of the 2002 STIP or the 2003 Incentive Plan.  (*See also,* October 17 Brief, III(C)(1), p. 12)  Accordingly, Defendants move for entry of judgment in their favor as to Plaintiff's Third Cause of Action.

2.   Plaintiff Failed To Prove That Chevron ES Breached The LTIP.

a.   The Court should deny Plaintiff's attempt to dismiss this claim so that it can be pursued again before a different trier of fact.

Plaintiff has indicated that he now intends to move to amend his Complaint under FRCP 15(a) in order to dismiss "*without* prejudice" his claim for stock options so that he can refile it as in a class action lawsuit.  (Liu Decl., ¶3, Ex. A)  Defendants oppose Plaintiff's motion to dismiss any claims without prejudice, at this late date after the close of evidence, and in anticipation of an unfavorable ruling by the Court.  After both the Court and Defendants have expended substantial resources in litigating this claim through trial, Plaintiff seeks to dismiss it "without prejudice" in an attempt to avoid a potentially adverse ruling on the merits of this claim.  Such a result would be highly prejudicial to Defendants.  Indeed, Defendants had opposed this very claim which was raised on the eve of trial, given that it was neither identified in Plaintiff's Complaint nor raised as wage claim during discovery.  The Court, however, provided Plaintiff latitude to pursue such a claim at trial and Plaintiff availed himself of that opportunity.  (*See* RT 150:15-152:9; 325:15-328:13; *see also* Pla's Trial Br., p. 16:12-17; Pla's Proposed Findings of Fact No. 38, filed 9/13/05)  Plaintiff should not be permitted to "withdraw" it after having forced Defendants to defend against it through trial and having asked the Court to expend its resources to analyze the claim and receive testimony about it.[16]

---

[16] Under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff must seek leave of Court to amend his pleadings at this time. Fed. R. Civ. P. 15(a).  While FRCP 15(a) provides that leave should be freely given "when justice so requires," Defendants urge the Court that this is not a

-13-

Plaintiff had more than a full and fair opportunity during this trial to present evidence to support his claim for breach of the LTIP and any resulting damages.  He entirely failed to do so. Defendants are entitled to judgment on the merits of this claim (*see* below) and should not be prejudiced by Plaintiff's failure to present evidence here so that he can attempt to refile the same claim in another lawsuit after having received an unfavorable tentative ruling from this Court. (*See,* RT 540:19-541:13; RT 600:12-601:3)

> b.   Plaintiff failed to demonstrate any breach of contract with respect to his stock options or any resulting damages.

Plaintiff's attempt to avoid an unfavorable ruling on this claim is well founded.  To prove breach of contract with respect to his stock options, Plaintiff must prove that Defendants breached the LTIP *and* resulting damages.  He has done neither.  He did not present any evidence to establish that Defendants "withdrew" stock options contrary to the terms of the LTIP and presented absolutely no evidence from which this Court can calculate damages for his claim for "lost stock options."

> (1)   Plaintiff presented no evidence that Defendants prevented him from exercising stock options contrary to the terms of the LTIP.

The LTIP delineated Plaintiff's right to exercise such stock options, and the plan is clear as for when Plaintiff could exercise and when the options would expire.  Plaintiff failed to present any evidence that he attempted to exercise any vested stock options, let alone prove that Defendants prevented him from exercising such vested stock options contrary to the terms of the LTIP.[17]  (See Jt. Exh. 12, p.4)

---

case where justice requires Plaintiff to dismiss his claim without prejudice, and in fact, this is a case where justice would require that the Court <u>deny</u> Plaintiff's motion to dismiss "without prejudice" his claim for stock options.  However, should the Court choose to dismiss Plaintiff's claim "*with* prejudice," Defendants would not oppose it.

[17] The LTIP provides:

> "***Upon termination of employment*** for reasons other than death, disabilities or termination of employment, or after age 50 and completing 10 years of service, at age 65, pursuant to the corporation's mandatory retirement policy, or following a change or control under circumstances which cause the optionee to be eligible for severance pay through the applicable executive severance programs maintained by the corporation, ***vested stock options may be exercised within 90 days from the date of***

-14-

The correspondence granting Plaintiff stock options briefly outlined the vesting schedule and emphasized that the grant was subject to the terms and rules of the LTIP, and enclosed a copy of the LTIP.  (Jt. Exhs. 12, 62, 76)  The LTIP provides that stock options could be exercised within 90 days of termination of employment.  If Plaintiff desired to exercise any vested stock options, he was free to do so within 90 days of his termination.  However, Plaintiff testified that:

- he did not read the LTIP before he filed this lawsuit;  (RT 326:14-25)

- although it is clear from the trial record that Plaintiff routinely communicated with Erickson during the September-November 2003 time period (RT 587:8-588:21; *see* Jt. Exh. 97), he only made one inquiry to Human Resources about the stock options (RT 327:2-11; 328:8-13); and

- he did not exercise any options.  (RT 325:15-23)

Senior Vice President Jeffrey Jacobs testified, consistent with the language of Joint Exhibit 12, that under the company's stock option plan, employees who were separating during a reduction-in-force had 90 days to exercise any vested stock options, and that such information was easily available on the company's website.  (RT 565:19-566:6)  At the time of Plaintiff's notice of termination he was referred specifically to the company's website for information relevant to his stock options.[18]  (Jt. Exh. 75, p. 7)  Jacobs further testified that employees could review the company's stock price easily by checking the company's intranet website, as the company's employee home page contained updated stock quotes.  (RT 575:17-576:1)  The evidence shows that Plaintiff was never told anything that contradicted the LTIP or the website.  (RT 331:2-17)   Consequently, the evidence shows that Plaintiff would have known how his

---

***termination, but in no case later than ten years from the date of grant.***"
(Jt. Exh. 12, p. 4 [emphasis added])

[18]  Plaintiff admits that he did not read all of the information provided to him in conjunction with his layoff. (RT 327:12-16)  Plaintiff further admits that because he did not find information regarding the stock options in what little he did read, he assumed there was no guidance in the layoff notice regarding his stock options. (RT 327:17-328:4)  However, the rules and regulations regarding the LTIP were easily accessible on the company's website, and Plaintiff was expressly notified of that information in his layoff notice. (*See,* Jt. Exh. 75, p. 7:  "Employee Savings Investment Plan and *1998 Stock Option Program* information may also be obtained from the same Web site or by calling  Human Resources Information Center at 1-888-TALK2HR (1-888-825-5247), *Option 1.  http://hr.chevrontexaco.com/northamerica/*" [emphasis added].  Although Plaintiff admits never following up on his inquiry to HR, his testimony further demonstrated his facility with obtaining information from the company website regarding information, such as the company's financials and the STEPS program.  (*See* RT 125:2-10; 265:8-11)

-15-

1   termination affected his stock options if he had read the LTIP or referred to the website - neither

2   of which, by his own admission he did.  Therefore,  there is no  evidence that would support his

3   allegation of breach of the LTIP.

4                       (2)      Plaintiff presented no evidence that he suffered any resulting
                                 damages from any alleged breach of the LTIP.
5

6        Furthermore, Plaintiff failed to present any evidence from which this Court could

7   determine damages or "lost profits" for any alleged breach of the LTIP.  The courts have taken a

8   variety of approaches to valuation when lost stock options are claimed as damages in litigation.

9   Two of these theories are conversion and breach of contract.   Under the conversion theory,

10  damages are intended to compensate a plaintiff for actual loss.  *Schultz v. Commodity Future*

11  *Trading Comm'n*, 716 F.2d 136, 139 (2nd Cir. 1983).   Conversion damages are based on lost

12  profits, which are computed by comparing the plaintiff's exercise price to (1) the value of the

13  stock at the time of the conversion, or (2) the highest intermediate stock price between the notice

14  of the conversion and a reasonable time thereafter during which the stock could have been

15  replaced, whichever is greater.  *Scully v. US WATS, Inc*., 238 F.3d 497, 509-10 (3rd Cir. 2001).

16  Under the breach of contract theory, the goal is to put the plaintiff in the same position he would

17  have held had the breach never occurred.  *Id*. at 510.  Under this theory, the court calculates

18  damages as of the date of the breach.  This is done by taking the difference between a stock

19  option's exercise price and the market price of the same stock at the time of the breach.  *Id*.

20       Here, Plaintiff did not introduce any evidence into the record of the value of Chevron

21  Corporation's stock at any time relevant to his claims nor any evidence that he attempted to

22  exercise his stock options on any such dates.  Consequently, in order to determine damages the

23  Court would be required to speculate as to whether Plaintiff attempted to exercise his stock

24  options, the dates on which Plaintiff might have attempted to exercise his options, and the value

25  of the stock options on any such possible dates.  The only evidence Plaintiff presented at trial was

26  Defendants' grant of stock options to him; his failure to exercise those options after his layoff;

27  and the expiration of those options.[19]  (RT 70:3-24, 74:9-21, 151:17-152:7, 251:4-252:16)  The

28  _____
    [19]   Defendants anticipate that Plaintiff will seek to use Jacobs' testimony as evidence to support

-16-

1   record is wholly insufficient from which the Court could find a breach of the stock option

2   exercise terms or award Plaintiff damages for stock options under either the conversion or breach

3   of contract theories.  Thus, Plaintiff's claim for damages for the stock options must fail.[20]

4          Accordingly, because there is no record evidence that would support a finding that

5   Defendants "withheld" Plaintiff's vested stock options contrary to the terms of the LTIP, and

6   because the record is devoid of any evidence from which this Court can award any damages for

7   "lost stock options," Plaintiff has failed to prove these elements of his breach of contract claim.

8   Defendants move for entry of judgment on Plaintiff's Third Cause of Action as to this issue.

9          3.     Plaintiff Failed To Prove That Chevron ES Breached the STEPS Program.

10         Plaintiff alleges that Chevron ES failed to respond to his STEPS complaint.  The evidence

11  at trial failed to prove this claim. (*See,* October 17 Brief, III(C)(2), p.12)  Moreover, Plaintiff

12  adduced no evidence of damages suffered as a result of the alleged breach of the STEPS program.

13         The trial testimony and documentary evidence unequivocally demonstrate that Chevron

14  ES fully responded to Plaintiff's grievance in accord with its STEPS program.  As shown by the

15  testimony of Human Resources Business Partner Barbara Erickson and her email correspondence

16  with Plaintiff (Jt. Exh. 94), she responded to Plaintiff's inquiries about his grievance (regarding

17  his incentive compensation) by explaining to him on numerous occasions that the Incentives

18  Committee was continuing to work on a template and methodology to calculate his incentive

19  compensation for Sunkist, and once she received a decision on the company's position on the

20  Sunkist incentive methodology, she would escalate the STEPS process to the next step and get a

21  his claim for damages or lost profits.  Jacobs, however, testified only that he believed that on the

22  morning of his trial testimony (October 17, 2005), he believed that Chevron's stock had closed at
    "$59 and change."  (RT 575:17-576:6)  In addition to the lack of evidence of any breach of the

23  LTIPon which damages could be based, Jacobs' statement in no way establishes whether Plaintiff
    attempted to exercise his stock options, the dates on which Plaintiff might have attempted to

24  exercise his options, and the value of the stock options on any such possible dates.

25  [20] Notably, the cases cited by Plaintiff in his trial brief (presumably to support his claim for lost
    profits resulting from alleged breach of the stock option plan) support *Defendants'* position that

26  calculation of any such lost profits cannot be speculative and must be awarded based upon
    evidence that demonstrate the claimed lost profits with reasonable certainty.  *See, e.g., Sanchez-*

27  *Corea et al. v. Bank of America,* 38 Cal. 3d 892 (1985) (holding that in a breach of contract case
    "evidence of lost profits must be unspeculative and in order to support a lost profits award the

28  evidence must show 'with reasonable certainty both their occurrence and the extent thereof.'")
    (*See,* Pla's. Trial Br. p. 16:12-17, filed 9/13/05)

DEFENDANTS' SUPP. MEM. OF PTS. AND AUTH. IN SUPPORT OF DEFS'
MOT. FOR JUDGMENT ON PARTIAL FINDINGS (C 040790 JSW)                    1217987.2

1    facilitator involved.  (RT 591:18-592:24; Jt. Exhs. 94, 107; *see* Jt. Exh. 55)

2         While Plaintiff may not have been satisfied with the response from Erickson and the

3    Incentives Committee (which apparently prompted him to cut off his communications regarding

4    the grievance), Plaintiff's own unilateral act in refusing to cooperate with Chevron ES fails to

5    prove that Chevron ES did not comply with the STEPS procedures.   Similarly, Plaintiff has

6    presented no evidence of any resulting damages for alleged breach of the STEPS procedures.

7    Accordingly, Defendants move this Court for entry of judgment in their favor on Plaintiff's Third

8    Cause of Action as to his STEPS claim.

9         4.    <u>As Plaintiff has failed to prove a breach of contract by Defendants, Defendants are
10             entitled to recover their reasonable attorney's fees.</u>

11        Under Arizona law, a court may award the successful party attorney's fees in any

12   contested action arising out of contract, express or implied.  ARS §12-341.01(A) (2005) (*see*,

13   Appendix of Arizona Authorities, filed herewith).   The party seeking fees has the burden of

14   proving its entitlement to an award and the reasonableness of its fee request.  *See Woerth v.*

15   *Flagstaff*, 808 P.2d 297, 304 (Ariz. Ct. App. 1990).  The Arizona Supreme Court has enumerated

16   six factors which courts must consider when deciding whether to award attorney's fees to a

17   prevailing party: (1) the merits of the unsuccessful parties' claim or defense; (2) whether the

18   litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful

19   party would cause extreme hardship; (4) whether the successful party prevailed with respect to all

20   relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others

21   from bringing meritorious suits.  *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1185 (Ariz.

22   1985).

23        Here, substantial evidence in the trial record demonstrates the lack of merit to Plaintiff's

24   breach of contract claims and that Defendants prevailed with respect to all of Plaintiff's claims

25   and shows that the litigation easily could have been avoided.  For instance, *by Plaintiff's own*

26   *admissions at trial*, he was owed nothing for the Sunkist projects under the actual terms of the

27   2003 Incentive Plan at the time of his layoff because the threshold revenue had not yet been

28   received and costs had not yet been determined.  (*See* Section III(B)(2), *supra*; October 17 Brief,

-18-

III(B), pp. 5-7)  The evidence further demonstrated that he was entitled to nothing for the Spa Casino project under the 2003 Incentive Plan because it had not yet closed out at the time Plaintiff initiated this litigation and ultimately did not meet the threshold margin.   (See Section III(B)(2)(c), *supra*)  Moreover, Plaintiff presented absolutely no evidence that he was owed *any* award under the 2002 STIP for his individual component, as he admitted fully that he booked no revenue for Chevron ES in either 2001 or 2002.  (*See,* Section III(B)(2)(d), *supra*)  Likewise, he has presented no evidence to support his claim for breach of the LTIP, and admitted that *he did not even read the LTIP prior to filing this lawsuit* (RT 326:14-25); he only made one inquiry to Human Resources about the stock options but did not follow-up because he had "moved on to other things" (RT 327:2-11; 328:8-13); and he did not exercise any options (RT 325:15-23).  As discussed above, Plaintiff also failed to present any evidence whatsoever of any resulting damages from the alleged breach of the LTIP.

In addition, the evidence is clear that this litigation could have been avoided.  Not only did Plaintiff complain prematurely as indicated above, his own testimony demonstrates that he never sought to resolve any of the potential disputes that comprised the claims of his lawsuit.  (*See,* RT 340:12-342:3; 327:2-11; 328:8-13; 281:5-18)  This testimony demonstrates a "litigation first" approach that justifies an award of attorney's fees under ARS §12-341.01(A).

On these facts, should the Court enter judgment in favor of Defendants on Plaintiff's Third Cause of Action, the Court should award Defendants attorney's fees as the successful party.

**E.      Plaintiff Failed To Sustain His Burden Of Proving His Fourth Cause Of Action For Wrongful Termination In Violation Of Public Policy.**

Finally, Plaintiff failed to prove wrongful termination in violation of public policy under either California law or Arizona law.

1.      Because Plaintiff Was Not A California Employee, He Cannot Allege a Public Policy Claim Based On The California Labor Code.

As briefed during trial, Plaintiff's claim for wrongful termination is barred because he will not be able to meet the threshold requirement for coverage under the California Labor Code -- the California public policy upon which Plaintiff's wrongful termination *Tameny* claim is based.  *See*

-19-

1    *Jennings v. Marralle et al.*, 8 Cal. 4th 121 (1994); October 14 Brief, pp. 1-2.   Accordingly,

2    Defendants are entitled to judgment in their favor on Plaintiff's Fourth Cause of Action.

3        2.   <u>Plaintiff Cannot Sustain A Claim For Wrongful Termination Under Arizona Law</u>.

4        Moreover, Plaintiff cannot maintain a claim for wrongful termination under Arizona law.

5    Wrongful termination actions in Arizona are governed entirely by statute, the Arizona

6    Employment Protection Act ("EPA"), ARS §23-1501 (2005) *et seq.*, under which an Arizona

7    employee can assert a cause of action against his employer on the theory of wrongful discharge.

8    (*see,* Appendix of Arizona Authorities, filed herewith)  The EPA allows employees to bring such

9    claims in only three circumstances: (1) if the discharge was in violation of an employment

10   contract; (2) if the discharge violated a statute of Arizona state; or (3) if the discharge was in

11   retaliation for the employee's assertion of certain rights protected by Arizona state law.   ARS

12   §23-1501; *Cronin v. Sheldon*, 195 Ariz. 531, 535-36 (1999).

13       Here, Plaintiff cannot state a claim under the EPA because his discharge claim is not

14   grounded upon violation of an implied or express employment contract,[21] and Plaintiff can point

15   to no Arizona statute that prohibits the allegedly retaliatory act of which he complains; namely,

16   alleged retaliation for complaining about compensation.  Furthermore, Defendants are unaware of

17   any Arizona case law that has applied the EPA wrongful termination statute to wage claims (i.e.,

18   that has used ARS §23-1501 as a basis for a wrongful termination claim under the EPA); nor is

19   there an Arizona statute that governs Plaintiff's claim for incentive compensation allegedly due

20   after Plaintiff was laid off.   Accordingly, Plaintiff's claim for wrongful termination should be

21   barred.  (*See* October 14 Brief, p. 6)

22       3.   <u>Plaintiff Failed To Prove That His Layoff Was Because Of His Complaints About</u>
         <u>Incentive Compensation; Trial Testimony Overwhelmingly Established That</u>
23       <u>Plaintiff's Layoff Was Due To Chevron ES's Reorganization Resulting From The</u>
         <u>Company's Change In Business Plans Following The Acquisition Of Viron.</u>
24

25       Finally, assuming *arguendo* that the Court concludes that Plaintiff is able to state a cause

26   

---

[21] Indeed, Plaintiff explicitly waived any claim for breach of implied contract not to terminate
27   except for good cause in his Opposition to Defendants' Motion for Summary Judgment, which
     this Court acknowledged in its Summary Judgment Order.  (Order Granting in Part and Denying
28   in Part Defs' Mot. for Summary Judgment, p. 7:3-15)

-20-

1    of action for wrongful termination in violation of public policy under either California law or

2    Arizona law based on his allegation that he was laid off in retaliation for complaining about

3    incentive compensation, the Court should confirm its tentative ruling finding that Plaintiff failed

4    to carry his burden of proof, as analyzed below.  (RT 538:3-539:14; *see* RT 603:12-22)

5           The unrefuted testimony at trial established that Plaintiff's sales position was eliminated

6    because following the acquisition of Viron, there was a change in the business plan of Chevron

7    ES to discontinue the pursuit of BOO projects in favor of design-build projects because of the

8    changing markets and because of the lack of capital to invest going forward.  This resulted in a

9    reduction-in-force and the forced ranking of employees, whereupon Plaintiff was ranked fifth out

10   of five sales employees because of his specialized emphasis on BOO projects.  Specifically:

11   •   President Jim Davis testified that following Chevron ES's acquisition of Viron in
12       2003, Chevron ES underwent an evaluation of whether a reorganization was
         necessary based on which markets Chevron ES wanted to focus on and where
13       those markets were located and also based on who the top performers were who
         met those goals.  (RT 241:15-242:4)
14

15   •   Chief Operating Officer John Mahoney, who was the president of Viron when it
         was acquired by Chevron ES, corroborated Davis's testimony.  Mahoney testified
16       that following the Viron acquisition, Chevron ES undertook a reorganization to
         match the business markets that the company had decided to pursue.  He explained
17       that the company decided to focus on the markets that had made Viron profitable,
         such as the public sector market, and therefore decided to downsize the emphasis
18       Chevron ES previously had had on the commercial and industrial (C&I) market.
19       (RT 354:1-5; 356:23-359:5)

20   •   Mahoney further testified that the company was facing a major change because
         until that time, Chevron ES had been receiving capital from Chevron Corporation
21       to make investments in the C&I market.  However, such capital no longer would
         be available, which greatly impacted the focus of the C&I market, and which
22       required Chevron ES to change its business plan to focus more on design-build
         projects rather than BOO projects, and "reduc[e] the head count."  (RT 359:6-
23       360:11)
24

25   •   Mahoney explained that as a result of the company's changing business plans,
         Chevron ES decided to eliminate two sales representative positions in the C&I
26       group, which was Plaintiff's sales team.  He implemented a resource optimization
         management plan, which called for a forced ranking of the sales team in order to
27       measure their skill set against the available positions and make the layoff selection.
         With respect to the C&I group, Mahoney evaluated the sales representatives'
28

-21-

effectiveness in selling design-build projects in the public sector and C&I market, given the company's changed business plan. (RT 362:20-364:18; 365:25-366:11)

- Mahoney testified that it was his decision to select Plaintiff for layoff. (RT 367:5-14) He further testified that he was unaware of any complaints that Plaintiff had made regarding his incentive compensation when he made the layoff decision in November 2003, and that the issue did *not* come up during the discussions with Barbara Erickson and Jeffrey Jacobs regarding the reorganization or Plaintiff's layoff. (RT 369:18-371:3)

- Plaintiff's supervisor Puneet Verma also corroborated Mahoney's testimony. Verma testified that he met with Mahoney in September 2003 because Mahoney had asked Verma to rank his sales team. Verma ranked Plaintiff fifth out of five because Chevron ES no longer had the capital to proceed with BOO projects, which was Plaintiff's recognized specialty and focus ever since he was hired. (RT 465:14-466:19) In fact, Verma testified that Plaintiff was the one who had introduced the concept of the BOO structure to Chevron ES when he was hired, and that Plaintiff was not interested in pursuing design-build projects. (RT 466:17-25; 467:17-25)

- Finally, Verma credibly testified that -- contrary to Plaintiff's allegations -- *he never informed Plaintiff* that Plaintiff would be fired if he filed a grievance or "did anything to bring attention to himself." (RT 511:4-9)

The overwhelming witness testimony and evidence at trial demonstrated that Chevron ES terminated Plaintiff's employment because of the business reorganization resulting from the Viron acquisition and changed business plans, not because of any complaints he made incentive compensation. (*See also*, Jt. Exh. 215) There is no evidence in the record from which this Court can conclude that Chevron ES's reasons for terminating Plaintiff's employment was pretext for a retaliatory reason. Accordingly, Defendants move for entry of judgment in their favor on Plaintiff's Fourth Cause of Action under both California law and Arizona law.

## IV.   CONCLUSION

Because Plaintiff has failed to sustain his burden of proof on all causes of action, Defendants respectfully request the Court to grant judgment in favor of Defendants on all causes of action, including an award of costs (including but not limited to attorney's fees previously awarded to Defendants by the Court in its Order Re: Plaintiff's Late Filings and Request to File

-22-

1    Documents Under Seal dated June 20, 2005) and reasonable attorney's fees for trial in this action

2    as the prevailing party under ARS §12-341.01(A).

3

4    DATED:  November 1, 2005                    HANSON, BRIDGETT, MARCUS, VLAHOS &
                                                                                RUDY, LLP
5

6
                                                                  By
7                                                                       _____/s/_____

8                                                                               M.D. MOYE
                                                                              DOROTHY S. LIU
9                                                                           S. LANAY NEWSOM
                                                                         Attorneys for Defendants
10                                                              Chevron Corporation, Chevron U.S.A. Inc. and
                                                                       Chevron Energy Solutions, L.P.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-