1  HANSON, BRIDGETT, MARCUS, VLAHOS & RUDY LLP
   M. D. MOYE - 152871
2  DOROTHY S. LIU - 196369
   S. LANAY NEWSOM - 226393
3  425 Market Street, 26th Floor
   San Francisco, CA  94105
4  Telephone:    (415) 777-3200
   Facsimile:    (415) 541-9366
5  mmoye@hansonbridgett.com
   dliu@hansonbridgett.com
6  slnewsom@hansonbridgett.com

7  Attorneys for Defendants
   Chevron-Texaco Corporation, Chevron U.S.A. Inc. and
8  Chevron Energy Solutions, L.P.

9              UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  LANDIS MAEZ,                        No. C 040790 JSW (EDL)

13            Plaintiff,                **DEFENDANTS' NOTICE OF MOTION
                                        AND MOTION FOR ATTORNEYS' FEES;**
14       v.                             **MEMORANDUM OF POINTS AND
                                        AUTHORITIES**
15  CHEVRON-TEXACO CORPORATION,
    CHEVRON U.S.A. INC. AND             **[FRCP 54(d)(2); A.R.S. §12-341.01]**
16  CHEVRON ENERGY SOLUTIONS L.P.,
                                        Date:       July 28, 2006
17            Defendants.               Time:       9:00 a.m.
                                        Courtroom   2, 17th Floor, San Francisco
18                                      Judge:      Hon. Jeffrey S. White
                                        Action Filed:  February 25, 2004
19                                      **Judgment Entered:  May 11, 2006**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

III. RELEVANT FACTS ........................................................................................ 1

   A.  Plaintiff's Complaint Alleged Five Separate Causes Of Action Against
       Defendants Claiming He Had Been Wrongfully Terminated And Denied
       Earned Incentive Compensation .............................................................. 1

   B.  The Court Granted Summary Judgment To Defendants On Certain Of
       Plaintiff's Claims And Found Potential Factual Disputes Permitting
       Plaintiff The Opportunity To Prove Those Matters At Trial ..................... 2

   C.  At Trial, Plaintiff's Testimony Caused Him to Restyle His Claims as
       Breaches of Contract Under Arizona Law, And Plaintiff Elected to
       Continue the Trial Under This Theory, As Admissions in His Own
       Testimony Precluded Any Relief Under California Law ............................ 2

       1.  First And Second Causes Of Action For Violation Of California
           Wage And Hour Law ...................................................................... 3

       2.  Third Cause Of Action For Breach Of Contract ............................ 3

           a.  Sunkist Projects ............................................................... 3

           b.  Spa Casino ....................................................................... 4

           c.  2002 STIP (January-June 2003) ...................................... 4

           d.  Long-Term Incentive Plan ............................................... 4

           e.  Offer Of Severance Payment ........................................... 5

       3.  Fourth Cause Of Action For Wrongful Termination .................... 5

   D.  In Response To Defendants' Rule 52(c) Motion The Court Identified The
       Evidence That Plaintiff Had Failed To Present, But Plaintiff Did Not
       Remedy The Deficiency By Presenting Rebuttal Evidence ...................... 5

   E.  Plaintiff's Post-Trial Arguments Waived One Of His Claims Outright And
       Acknowledged That For The Claims He Was Making Arizona Law
       Permitted The Prevailing Party To Recover Attorneys' Fees And The Court
       Entered Judgment In Favor Of Defendants .............................................. 6

IV.  ARGUMENT .................................................................................................... 7

   A.  An Award Of Attorneys' Fees In This Case Is Appropriate ...................... 7

       1.  The First Factor Is Satisfied:  Despite Numerous Opportunities To
           Prove His Case, The Trial Record Demonstrates That Plaintiff Had
           No Evidence to Prove His Claims .................................................. 9

       2.  The Second Factor Is Satisfied:  Plaintiff Persisted In This
           Litigation Notwithstanding The Fact That It Was Clear That He
           Had No Evidence To Support His Case ......................................... 10

       3.  The Third Factor Is Satisfied:  Plaintiff's Litigation Strategy
           Suggests That An Award Of Attorneys' Fees Will Not Be Undue
           Hardship For Him .......................................................................... 11

- i -

1

**<u>TABLE OF CONTENTS</u>**
**(continued)**

2

                                                                                                    **Page**

3
        4.     The Fourth Factor Is Satisfied:  The Court's Entry Of Judgment
             Confirms That Defendants Are The Successful Party ............................ 11

4
        5.     The Fifth Factor Is Satisfied:  The Legal Questions Presented By
5
             Plaintiff's Claims Were Not Complex or Novel ...................................... 12

        6.     The Sixth Factor Is Satisfied:  An Award Of Attorneys' Fees In
6
             This Case Will Not Deter Plaintiffs With Sound Claims From
             Filing Lawsuits .......................................................................................... 12

7
   B.     Chevron's Fee Request Is More Than Reasonable ............................................... 12

8
        1.     Chevron's Calculations For Lodestar Are Based On A Reasonable
             Number Of Hours Multiplied By Its Counsel's Hourly Rates .................. 13

9
        2.     Defendants' Request Is Premised Upon Reasonable Hourly Rates .......... 14

10
V.    CONCLUSION ................................................................................................................. 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEYS' FEES;
MEMORANDUM OF POINTS AND AUTHORITIES  (NO. C 040790 JSW (EDL))

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

Associated Indemnity Corp. v. Warner
   143 Ariz. 567, 694 P.2d 1181 (Ariz. 1985).............................................................. 8

Bihun v. AT&T Info. Sys.
   13 Cal.App.4th 976 (1993)........................................................................................ 14

City of Burlington v. Dague
   505 U.S. 557 (1992).................................................................................................. 13

Crommie v. Public Utilities Commission
   840 F. Supp. 719 (N.D. Cal. 1994) ......................................................................... 14

Fleischmann Distilling Corp. v. Maier Brewing Corp.
   386 U.S. 714 (1967).................................................................................................. 12

Hensley v. Eckerhart
   461 U.S. 424 (1983).................................................................................................. 13

Marcus v. Fox
   150 Ariz. 333; 723 P.2d 682 (Ariz. 1986)................................................................ 12

Perkins v. Mobile Hous. Bd.
   847 F.2d 735 (11th Cir. 1988).................................................................................. 14

Schweiger v. China Doll Restaurant, Inc.
   138 Ariz. 183, 673 P.2d 927 (App. 1983) ............................................................... 13

Wooldridge v. Marlene Indus. Corp.
   898 F.2d 1169 (6th Cir. 1990).............................................................................. 13, 14

20

**Statutes**

21

Arizona Revised Statutes
   Section 12-341.01 .................................................................................................. 1, 8
   Section 12-341.01(A) ......................................................................................... 1, 8, 11
   Section 12-341.01(B) ................................................................................................ 8

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEYS' FEES;
MEMORANDUM OF POINTS AND AUTHORITIES  (NO. C 040790 JSW (EDL))

1   **TO:    PLAINTIFF LANDIS MAEZ AND HIS ATTORNEYS OF RECORD:**

2          PLEASE TAKE NOTICE that on July 28, 2006, at 9:00 a.m., Defendants Chevron

3   Corporation (formerly Chevron-Texaco Corporation), Chevron U.S.A. Inc., and Chevron Energy

4   Solutions, L.P. (collectively "Defendants" or "Chevron") will and do hereby move this Court,

5   located at 450 Golden Gate Avenue, San Francisco, CA 94102, for an order granting Defendants'

6   Motion for Attorneys' Fees in the amount of $374,386.00.  This motion is made pursuant to Rule

7   54(d)(2) of the Federal Rules of Civil Procedure, Local Rule 54-6 and Arizona Revised Statutes

8   Section 12-341.01(A).

9          This motion is based on the Memorandum of Points and Authorities in Support of

10  Defendants' Motion for Attorneys' Fees, the Declarations of M.D. Moye, Dorothy S. Liu, and S.

11  Lanay Newsom, the papers on file with this Court, and such other evidence and authority as may

12  be introduced at the time of the hearing.

13

14  DATED:  May 25, 2006                        HANSON, BRIDGETT, MARCUS, VLAHOS &
                                                RUDY, LLP
15

16
                                     By:            /s/ M.D. Moye
17                                                  M. D. MOYE
                                                DOROTHY S. LIU
18                                              S. LANAY NEWSOM
                                              Attorneys for Defendants
19                               Chevron-Texaco Corporation, Chevron U.S.A. Inc.,
                                      and Chevron Energy Solutions, L.P.
20

21

22

23

24

25

26

27

28

1

### SUMMARY OF ARGUMENT

2   Following two years of litigation over Plaintiff's claims for alleged breaches of contract,

3   which culminated in a three-day bench trial, the Court found that Plaintiff had failed to present

4   evidence to support his claims and entered judgment in favor of Defendants on all claims.

5   Indeed, the Court had provided Plaintiff with numerous opportunities to prove his case and

6   pointed directly to needed evidence, yet it was apparent during trial that he had no evidence to

7   support his contract claims.

8   Moreover, Plaintiff could have resolved his claims on several occasions – both before he

9   filed his lawsuit and at various junctures throughout this litigation.   Nevertheless, Plaintiff

10   zealously pursued litigation in a headstrong manner which resulted in his eleventh hour decision

11   to bring his contract claims to trial under Arizona law (once it was clear that his pursuit under

12   California Labor Code attorneys' fees provision had been lost), in the hopes of recovering fees

13   under Arizona's breach of contract statute, A.R.S. § 12-341.01(A), which provides for an award

14   of fees to the "successful party" for claims arising out of contract.  *Associated Indemnity Corp. v.*

15   *Warner*, 143 Ariz. 597, 694 P.2d 1181 (Ariz. 1985).

16   Consequently, it is undisputed that Plaintiff elected to try all of his claims specifically

17   under Arizona law as breach of contract claims and it is undisputed that Defendants prevailed on

18   all such claims.  As analyzed below, not only do the circumstances of this litigation warrant an

19   award of attorneys' fees to Defendants under A.R.S. § 12-341.01, but the rates for defense

20   counsel are more than reasonable, as they are substantially lower than the billing rates Plaintiff's

21   own counsel claimed.  Under the facts of this case, Defendants respectfully request that the Court

22   grant their motion for attorneys' fees.

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3       On May 11, 2006, this Court entered judgment on all claims against Plaintiff Landis Maez

4   ("Plaintiff") and in favor of Defendants Chevron-Texaco Corporation (now "Chevron

5   Corporation"), Chevron U.S.A. Inc., and Chevron Energy Solutions, L.P. ("CES") (collectively

6   "Defendants" or "Chevron").  Because Plaintiff ultimately elected to pursue his claims as alleged

7   contract breaches under Arizona law and pursuant to Arizona Revised Statutes Section 12-341.01

8   which provides that the "successful party" in contract claims is entitled to recover its attorneys'

9   fees, Defendants are entitled to recover their attorneys' fees as an element of the costs of suit.[1]

10

## II.   STATEMENT OF ISSUES TO BE DECIDED

11      1.   May this Court award attorneys' fees to the Defendants as the "successful party"
             under Arizona Revised Statutes 12-341.01(A), where Plaintiff specifically
12           brought his claims to trial as breach of contract claims under Arizona law?

13      2.   Should this Court exercise its discretion to award attorneys' fees to Defendants
             where the factors considered under A.R.S. § 12-341.01(A) have been met;
14           namely, the trial record demonstrates that Plaintiff persisted in this case even
             though it was clear he had no evidence to prove his case, Defendants prevailed on
15           all claims brought by Plaintiff, Plaintiff declined numerous efforts to resolve his
             case short of trial, Plaintiff's pursuit of out-of-state litigation through trial
16           demonstrates that an award of fees would not cause extreme hardship, and a fee
             award will not deter plaintiffs with sound claims?

17

18

## III.   RELEVANT FACTS

19  **A.   Plaintiff's Complaint Alleged Five Separate Causes Of Action Against Defendants
         Claiming He Had Been Wrongfully Terminated And Denied Earned Incentive**
20       **Compensation.**

21      Plaintiff was employed as a salesperson with CES until his termination pursuant to a

22  layoff in November 2003.  In the First and Second Causes of Action of his Complaint, he alleged

23  that he was owed incentive compensation (and penalties) for various projects that he worked on

24  during his employment.  He also alleged that CES breached obligations to him by failing to pay

25  the compensation he claimed he was due and, subsequent to his termination cancelling stock

26  options that he had earned (Third Cause of Action).  In his Fourth Cause of Action, Plaintiff

27  ────────────────
    [1] Defense counsel attempted to meet and confer with Plaintiff's counsel pursuant to Local Rule
28  54-6 but were unable to reach agreement as to Defendants' attorneys' fees.  Declaration of M.D.
    Moye ("Moye Decl.") ¶ 12; Declaration of Dorothy S. Liu ("Liu Decl.") ¶2, Exs. A and B.

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEYS' FEES;
MEMORANDUM OF POINTS AND AUTHORITIES  (NO. C 040790 JSW (EDL))                    1254600.4

1   claimed that his termination was retaliation for complaining about the alleged failure to pay his

2   compensation.  Finally, Plaintiff sought declaratory relief restricting Defendants from enforcing

3   its non-disclosure agreements with Plaintiff.  (Moye Decl., Ex. B, Order Granting in Part and

4   Denying in Part Defendants' Motion for Summary Judgment, ("Summ. Judgmt Order") pp. 4-10)[2]

5   **B.   The Court Granted Summary Judgment To Defendants On Certain Of Plaintiff's
       Claims And Found Potential Factual Disputes Permitting Plaintiff The Opportunity
6       To Prove Those Matters At Trial.**

7       On July 13, 2005, this Court partially granted Chevron's summary judgment motion

8   dismissing Plaintiff's Third and Fourth Causes of Action in part and dismissed the Fifth Cause of

9   Action in its entirety.  While the Court did not grant Chevron's summary judgment motion in its

10  entirety, the Court did note specific factual questions as to evidence that Plaintiff might present at

11  trial to prove his claims.   (Summ. Judgmt Order, pp. 4-10)  Pursuant to the Court's order,

12  Plaintiff's First, Second and parts of his Third and Fourth Causes of Action remained for trial.

13  The Court's summary judgment order indicated Plaintiff would have to prove that he was a

14  California resident to prevail on his First and Second Causes of Action.  (Summ. Judgmt Order

15  pp. 4-6)  Moreover, with respect to his Third Cause of Action, the Court found that Plaintiff

16  might prevail if he could prove the existence of an agreement that had been breached by

17  Defendants to pay him incentive compensation or any other obligation.  (Summ. Judgmt Order p.

18  7) Finally, the Court determined that Plaintiff might prevail on his Fourth Cause of Action if he

19  could present evidence that his termination was not justified by legitimate business reasons.

20  (Summ. Judgmt Order pp. 7-10)

21  **C.   At Trial, Plaintiff's Testimony Caused Him to Restyle His Claims as Breaches of
       Contract Under Arizona Law, And Plaintiff Elected to Continue the Trial Under
22      This Theory, As Admissions in His Own Testimony Precluded Any Relief Under
       California Law.**
23

24      In Plaintiff's case-in-chief, he made several key admissions that ultimately undermined

25  the remaining claims left for trial.

26  / / /

27  / / /

28
    _____
    [2] The Summary Judgment Order is attached as Exhibit B to the Declaration of M.D. Moye.

1.      First And Second Causes Of Action For Violation Of California Wage And Hour Law.

Although up to trial Plaintiff maintained that California law applied to his First and Second Causes of Action making clear that he sought "waiting time" penalties as well as attorneys' fees under the California Labor Code and California's private attorney general statute, Defendants, on the other hand, contended that Plaintiff was not a California employee entitled to the protection of the California Labor Code.   At trial, Plaintiff's testimonial admissions established that he is a legal resident of Arizona: he worked out of his home in Phoenix, Arizona, paid state taxes in Arizona and never resided in California nor paid taxes in California during his employment with Chevron.  (Declaration of S. Lanay Newsom Ex. B, Record of Trial ("RT") 19:4-7; 22:9-16; 301:13-14; 345:25-346:11)[3]   Notwithstanding the clear guidance from the summary judgment order, Plaintiff presented no evidence that demonstrated California citizenship.

2.      Third Cause Of Action For Breach Of Contract.

a.      Sunkist Projects.

Before trial, Plaintiff claimed Defendants owed him no less than $373,000 in alleged incentive compensation for the Sunkist projects under its written Incentive Plan or based on oral agreements.  However, as the Court found in its Findings of Fact, at trial Plaintiff conceded that under the express terms of the Incentive Plan nothing would be owed to him until CES received 20% of the revenue of the projects and at the time his employment ended CES had not received the 20% of the revenue to be earned on the Sunkist projects.  (RT 334:22-25, 335:25-336:16) Plaintiff also did not present any credible evidence that an oral agreement existed that modified the express terms of the Incentive Plan.  (Moye Decl. Ex. E, Findings of Fact and Conclusions of Law ("FFCL") p. 4)[4]

/ / /

---

[3] All excerpts of the trial transcript are attached as Exhibit A to the Declaration of S. Lanay Newsom.

[4] The Court's Findings of Fact and Conclusions of Law are attached as Exhibit E to the Declaration of M. D. Moye.

- 3 -

1

         b.     Spa Casino.

2        Plaintiff also alleged he was owed additional compensation for Spa Casino.  However,

3  Plaintiff admitted that in September 2003, CES paid him $2,218.56 for Spa Casino, the entire

4  amount that the Incentives Committee in exercising its discretion, had decided to pay him at that

5  time despite the fact he was not entitled to compensation under the terms of the Incentive Plan,

6  and in March 2004 CES paid Plaintiff $246.51, which equaled the remaining amount he was

7  awarded by the Incentives Committee paid at the appropriate time.  (RT 322:15-17; 18-21)

8  Plaintiff presented no credible evidence of any agreement that modified the payments that he was

9  due under the Incentive Plan.   He also presented no evidence that any requirement of the

10 Incentive Plan had not been satisfied.[5]  (FFCL pp. 4-5)

11         c.     2002 STIP (January-June 2003).

12        Plaintiff also raised a claim for "six months of earned incentive wages accrued from

13 January to June 2003" under the 2002 Short Term Incentive Plan ("STIP"). (RT 315:24-316:4)

14 This claim appeared to allege that Defendants' decision in July 2003 to apply retroactively the

15 2003 Incentive Plan to January 2003 deprived him of additional compensation owed.  However,

16 Plaintiff admitted that the STIP by its express terms expired on December 31, 2002 and that he

17 was never told that the STIP was extended to cover projects completed in 2003. (RT 316:17-

18 317:4)  Again, as the Court found in its Findings of Fact, Plaintiff did not present any evidence

19 that projects in 2003 were covered by the 2002 STIP, nor any evidence as to what damages he

20 alleges he incurred under the 2002 STIP.  (FFCL p. 3)

21         d.     Long-Term Incentive Plan.

22        Plaintiff also claimed that he was owed "wages" in the form of vested stock options under

23 the Chevron Long Term Incentive Plan ("LTIP"), alleging that they were "withdrawn" contrary to

24 the terms of the plan. (RT 151:17-25; 325:15-23).  Nevertheless, the evidence showed that the

25 written terms of the LTIP called for the stock options to be exercised within 90 days of

26 _____

27 [5] Plaintiff might have been entitled to additional compensation at the "close out" of the project.
Plaintiff presented no evidence that the project had "closed out" that the project met or would

28 meet the threshold requirements for compensation under the Incentive Plan at that time, and
admitted that he had no evidence on this point.  (RT 323:19-23; 332:17-20)

termination.  (FFCL pp. 5-6)  Plaintiff testified that he did not read the Long Term Incentive Plan before he filed the lawsuit and that he did not exercise any of his vested stock options.  (RT 325:15-23; 326:14-25)  Plaintiff presented no evidence indicating his history of exercising stock options or the value of the stocks at the time when he would have exercised such options.  (FFCL p. 6)

      e.  Offer Of Severance Payment.

  Plaintiff further claimed that he was owed a severance payment.  Nevertheless, he conceded that he was offered a severance but refused the severance package, which totaled approximately $17,000.  Despite the fact that Plaintiff claimed he rejected the offer because of a release he was required to sign, he admitted that he did not ask anyone at Chevron about the release and whether it would have affected any of his other rights.[6]  (RT 144:9-11; 340:22-341:11)

    3.  Fourth Cause Of Action For Wrongful Termination.

  Once it was clear that Plaintiff was not a California resident, he conceded that he could not maintain a claim for wrongful termination under California law.[7]  [*See* Section II.D, *supra*.]

**D. In Response To Defendants' Rule 52(c) Motion The Court Identified The Evidence That Plaintiff Had Failed To Present, But Plaintiff Did Not Remedy The Deficiency By Presenting Rebuttal Evidence.**

  Near the conclusion of the trial, the Court again identified for Plaintiff evidence that was necessary to meet his burden of proof that had not yet been presented. Because the state of the evidence showed at the close of Plaintiff's case-in-chief that Plaintiff could not maintain his claims, Chevron moved for an entry of judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.  As opposed to ruling on the motion, the Court offered a summary as to the state of the evidence before Defendants presented their case and Plaintiff presented rebuttal evidence.  (RT 536:14-543:7)  These findings revealed the specific areas where

---

[6] Plaintiff conceded that he "believed" that the release affected his right to claimed incentive compensation, but he also admits that Defendants never told him such was this case.  The release by its terms did not affect his right to incentive compensation.  (RT 340:22-344:11)

[7] As this Court noted, Plaintiff restyled his claim for wrongful termination in violation of public policy under California law into a breach of contract claim for retaliation under Arizona law, consequently marrying this claim to his other breach of contract claims.  (FFCL, pp. 1-2 n.1)

1   Plaintiff had not sustained his burden of proof.[8]

2          For example, the Court noted that Plaintiff failed to prove that he was owed any additional

3   compensation for the Sunkist projects under either the 2003 Incentive Plan or under any separate,

4   binding side agreement; Plaintiff had not presented evidence that established an entitlement to

5   additional payment on the Spa Casino project; and Plaintiff had presented no evidence to override

6   the express language of the LTIP plan or to calculate damages on his stock option claim.[9]  (FFCL

7   pp. 9-10; RT 539:15-540:18)  Despite the Court's clear indication of the evidence Plaintiff needed

8   to sustain his burden of proof, Plaintiff did not present any rebuttal evidence.  (RT 597:1-3)

9          At the close of all evidence, the Court made tentative findings of fact and conclusions of

10  law in favor of Chevron on all causes of action brought by Plaintiff.  (RT 597:18-598:5)  As part

11  of its central findings, the Court found Plaintiff was an Arizona resident rather than a California

12  resident.  Under this finding, Plaintiff could not prevail on any claims under his First, Second or

13  Fourth Causes of Action.[10]  However, before making its final ruling, the Court granted Plaintiff

14  the opportunity to present argument to demonstrate the applicability of Arizona law and to

15  identify evidence sufficient to sustain his burden.  (RT 602:7-23; 602:24-603:11; 603:12-22;

16  600:23:-601:3; 603:23-604:2; 604:3-5; 604:6-12; 604:20-23)

17  **E.    Plaintiff's Post-Trial Arguments Waived One Of His Claims Outright And
18          Acknowledged That For The Claims He Was Making Arizona Law Permitted The
            Prevailing Party To Recover Attorneys' Fees And The Court Entered Judgment In
19          Favor Of Defendants.**

20         In his supplemental briefing to the Court, Plaintiff waived his Fourth Cause of Action for

21  wrongful termination in violation of public policy under both California and Arizona law.  (Moye

22  / / /

23  [8] This is not surprising as Plaintiff conducted no formal discovery and took no depositions
24  throughout this litigation.

25  [9] The Court noted that the undisputed evidence disposed of Plaintiff's claims for relief under the
    California Labor Code, additional compensation under the STIP, damages related to the
26  severance agreement, and relief for wrongful termination.  (RT 537:8-540:18)

27  [10] As a result, Plaintiff sought to recast all of his claims under Arizona law.  As Arizona law does
    not provide for wrongful termination in violation of public policy or wage provisions similar to
28  the California Labor Code, Plaintiff redefined all of his claims as contract breaches pursuant to
    Arizona law.  (*See* FFCL, pp. 1 n.1, pp. 7-10)

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEYS' FEES;
MEMORANDUM OF POINTS AND AUTHORITIES  (NO. C 040790 JSW (EDL))                    1254600.4

Decl., Ex. D, Pla. Opp. Br. 7:22-8:6)[11]  Plaintiff also conceded the applicability of Arizona law to his remaining claims and waived all claims made under California law.  (Pla. Opp. Br. 2:1-6, n.1; 8:4-6)  Likewise, Plaintiff agreed that a successful party under Arizona law would be entitled to his attorneys' fees.[12]  (*Id.* at 12:18-13-23)

The Court's Findings of Fact and Conclusions of Law determined that Plaintiff had not presented evidence to prove his claims or had admitted in testimony facts dispositive of his claims:

> (1) Plaintiff had failed to produce any evidence that he was owed additional compensation under the 2002 Short Term Incentive Plan (FFCL 7:11-14);

> (2) Plaintiff failed to show he was owed any wages under the 2003 Incentive Plan for the Spa Casino or Sunkist projects (FFCL 8:12-14);

> (3) Chevron terminated Plaintiff as part of a layoff and reorganization, not in response to any complaints or grievances Plaintiff filed regarding his wages (FFCL 8:19-23);

> (4) Plaintiff failed to demonstrate an agreement to pay severance existed as he had not signed the severance agreement (FFCL 9:4-6); and

> (5) even if Plaintiff could have demonstrated that Chevron was not entitled to terminate his vested stock options after 90 days, he did not meet his burden to provide evidence from which the Court could calculate damages.[13] (FFCL 9:14-16)

Consequently, this Court found in favor of Chevron and entered Judgment against Plaintiff on all claims.  (FFCL 10:4-5)

## IV.   ARGUMENT

### A.   An Award Of Attorneys' Fees In This Case Is Appropriate.

Under Arizona law, the court may award the successful party reasonable attorneys' fees in

---

[11] Plaintiff's Closing Argument and Opposition to Defendants' Motion for Judgment as a Matter of Law ("Pla. Opp. Br.") is attached as Exhibit D to the Declaration of M.D. Moye.

[12] The Court suggested that in light of its tentative findings the parties should consider discussing resolution of the case.  Despite the fact that the tentative findings indicated the Court was prepared to grant judgment for Defendant on most if not all of Plaintiff's claims, Plaintiff made no effort to discuss settlement of the case at any time prior to judgment being entered.  (Moye Decl. ¶8)

[13] Despite the Court noting the absence of evidence in the record from which damages could be calculated for alleged breach of stock options plan – which the Court discussed with the parties at the close of Plaintiff's case-in-chief –Plaintiff elected not to introduce such evidence in rebuttal. (RT 540:19-541:17; 597:1-7)

any contested action arising out of a contract, express or implied.  A.R.S § 12-341.01(A).[14]  "The award of reasonable attorney fees pursuant to subsection (A) should be made to mitigate the burden of the expense of litigation to establish…a just defense…."  A.R.S. § 12-341.01(B).  Here, as discussed, Plaintiff restyled all of his claims so that he could pursue them at trial specifically as breach of contract claims under Arizona law.  (*See* FFCL pp. 7-10)  That is, it is undisputed that Plaintiff elected to pursue his claims explicitly as ones "arising out of contract" within the meaning of A.R.S. § 12-341.01 and that Plaintiff explicitly pointed out the applicability of A.R.S. § 12-341.01 to his contract claims.  It also is undisputed that Defendants are the "successful party" within the meaning of A.R.S. § 12-341.01, as Defendants prevailed on all claims Plaintiff brought to trial.  Therefore, the Court may award Defendants' reasonable attorneys' fees under Arizona's breach of contract statute.

The Arizona Supreme Court set forth six factors courts should consider in determining whether attorneys' fees should be awarded under section 12-341.01.  Those factors include: (1) the merits of the claims or defense presented by the unsuccessful party; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) the novelty of the legal question presented, and whether the claim or defense had previously adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.  *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (Ariz. 1985) (setting standard for awarding attorneys' fees under A.R.S. § 12-341.01 for breach of contract claim brought under Arizona law).  As shown below, Defendants have satisfied all six factors, thereby warranting an award of attorneys' fees.

/ / /

---

[14]  Arizona Revised Statutes Section 12-341.01(A) provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."

- 8 -

1

2

      1.     The First Factor Is Satisfied: Despite Numerous Opportunities To Prove His Case, The Trial Record Demonstrates That Plaintiff Had No Evidence to Prove His Claims.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

      Although Plaintiff was given multiple opportunities to prove his case, substantial evidence in the trial record demonstrates the lack of merit to Plaintiff's breach of contract claims. In every instance that Plaintiff was alerted by Defendants or the Court as to evidence necessary to prevail, he failed to present such evidence at trial.  For instance, although Plaintiff was given the opportunity to respond to Defendants' motions in limine which attacked his retaliation claim, he presented no credible evidence to rebut Defendants' motions, instead asserting in his written reply to the motions in limine that the issue should be determined at trial.[15] (Moye Decl. Ex. C MIL Response)[16]  Moreover, although the Court allowed Plaintiff to present evidence at trial on his claim that he was owed compensation for the Sunkist project, at trial Plaintiff conceded that he was owed nothing for the Sunkist projects under the actual terms of the 2003 Incentive Plan at the time of his layoff because the threshold revenue and costs had not yet been determined.  (RT 334-336)  Plaintiff was given another chance when the Court made tentative rulings in Chevron's favor that specifically detailed the evidence that the Court believed Plaintiff had not presented in order to sustain his burden of proof.  Nevertheless, despite the Court's express admonitions about the weaknesses in his case, Plaintiff decided not to put on rebuttal evidence. (RT 597:1-3)

18

19

20

21

22

23

      At the end of the trial, the Court gave Plaintiff another chance to prove his case when it requested that Plaintiff address issues critical to its findings in his supplemental briefing.  However, in his brief, Plaintiff failed to address certain issues raised by the Court.  For instance, Plaintiff failed to provide briefing as to compensable contract damages if any, for alleged breach of the STEPS policy.  (Pla. Opp. Br. pp. 25:6-26:15)  Plaintiff also failed to provide briefing as to his claim for alleged unpaid wages under the 2002 STIP.  (*Id.* at pp. 13:24:14)

24

25

      An award of attorneys' fees is appropriate here where Plaintiff was given numerous

26

27

[15] At trial, Plaintiff presented no meaningful evidence to support a retaliation claim and in fact, his own witnesses established a legitimate business justification for his termination.  (RT 238:3-240:20; 357:19-359:5; 359:6-13; 465:14-466:25)

28

[16] Plaintiff's Opposition to Motion in Limine Numbers 1, 2 and 3 ("MIL Response") are attached as Exhibit C to the Declaration of M.D. Moye.

- 9 -

1    chances to present evidence to sustain his burden of proof but still did not present any evidence.

2          2.        The Second Factor Is Satisfied:   Plaintiff Persisted In This Litigation
                     Notwithstanding The Fact That It Was Clear That He Had No Evidence To
3                    Support His Case.

4          Plaintiff's pre-lawsuit actions demonstrated a "litigation first" approach.   The evidence

5    shows that this litigation might have been avoided if Plaintiff had sought to resolve any of the

6    potential disputes that comprised the claims of his lawsuit.   (*See* RT 340:12-342:3; 327:2-11;

7    328:8-13; 281:5-18)   For instance, Plaintiff alleged that he was owed a severance payment of

8    $17,000, however, at trial he admitted that he rejected Chevron's offer of a severance package

9    and did not ask anyone at Chevron about the release.   (RT 144:9-11; 340:22-341:11)   In addition,

10   Plaintiff alleged that Chevron failed to respond to his STEPS complaint, yet Plaintiff admitted

11   that after his termination he unilaterally decided to refuse to communicate with Chevron

12   regarding the grievance and unilaterally withdrew from the STEPS procedure.   (RT 245:2-246:10;

13   270:8-271:4; 273:10-275:15)

14         Moreover, even after Plaintiff filed his lawsuit he refused to entertain any course of action

15   that might have resolved the litigation sooner.   In fact, Plaintiff's lead counsel did not even appear

16   or participate in the Early Neutral Evaluation held in November 2004.[17]   (Moye Decl. ¶3)

17   Chevron, on the other hand, was fully prepared to participate in the ENE.   Both CES's General

18   Counsel and CES's Senior Counsel (who flew in from Colorado) appeared for the ENE with full

19   settlement authority in order to ensure a meaningful and productive session.   (Moye Decl. ¶3)

20         Likewise, after the court granted partial summary judgment in Chevron's favor and it

21   became apparent that Plaintiff stood to lose on his most significant claims, there was no

22   indication that his position regarding settlement changed.   In fact, Plaintiff's settlement demand

23   went in the opposite direction.   (Moye Decl. ¶6)   Ultimately, Chevron's central contention, i.e.,

24   Plaintiff lacked evidence to prove his claim, was proved at trial.

25   / / /

26   / / /

27

28
_____
[17] ADR L.R. 5-10 requires that each party is accompanied at the ENE session by the lawyer who
will be primarily responsible for handling the trial of the matter.

1          3.      The Third Factor Is Satisfied:  Plaintiff's Litigation Strategy Suggests That An
                   Award Of Attorneys' Fees Will Not Be Undue Hardship For Him.

2

3          It would not appear that an award of attorneys' fees would cause undue hardship to

4    Plaintiff.[18]  Plaintiff was not forced to litigate this matter, as there were internal grievance

5    procedures he could have used to resolve any issues he may have had.  His decision to pursue out-

6    of-state litigation indicates that he was prepared for the consequences of that litigation.   In

7    addition, notwithstanding the fee arrangement between Plaintiff and his attorney, Plaintiff was

8    responsible for traveling back and forth from Arizona to California throughout this litigation.

9    Furthermore, Plaintiff aggressively pursued this litigation from the start and aggressively

10   continued his pursuit of litigation through trial.  The evidence shows that at no point was it

11   apparent that Plaintiff pursued this litigation to minimize the cost.[19]  In fact, Plaintiff raised the

12   issue of Arizona's reciprocal "successful party" fee shifting statute *during trial*.  (*See* RT 599:10-

13   23)  To the extent that Plaintiff argues that he would be burdened by an award of attorneys' fees,

14   that burden is no greater than his litigation strategy presupposed.

15         4.      The Fourth Factor Is Satisfied:  The Court's Entry Of Judgment Confirms That
                   Defendants Are The Successful Party.

16

17         The Court entered judgment in favor of Defendants and against Plaintiff on all of

18   Plaintiff's breach of contract claims (all of the claims litigated through trial).  Defendants have

19   prevailed in full and as such are the successful party under Arizona Revised Statutes section 12-

20   341.01(A).

21   _____

[18] Plaintiff's testimony suggested financial hardship that he attributed to his termination.  This
22   testimony is inconsistent, however, with Plaintiff's withdrawing from company procedures
     designed to resolve his concerns, rejecting a substantial monetary settlement, and foregoing any
23   settlement discussions that would have limited his exposure in the matter.

[19] For example, Plaintiff was unwilling to execute the Court's form protective order despite
24   having agreed that a protective order was a reasonable request and despite having failed to
     identify or request any modifications to the Court's form protective order.  Chevron was forced to
25   bring a noticed motion for a protective order, which the Court granted.  (Liu Decl. ¶3)  Next,
     Plaintiff was unwilling to authorize release of his medical records from his psychiatrist whom he
26   had identified in his interrogatory responses as having treated him for emotional/mental distress
     allegedly caused by Chevron.  Chevron was ultimately forced to obtain the records by bringing a
27   formal motion in the District Court of Arizona, which the Court granted.  (Liu Decl. ¶4)  In fact,
     defense counsel was required to spend nearly 100 hours on discovery motion-related litigation.
28   (Liu Decl. ¶4)

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEYS' FEES;
MEMORANDUM OF POINTS AND AUTHORITIES  (NO. C 040790 JSW (EDL))                    1254600.4

1        5.      The Fifth Factor Is Satisfied:  The Legal Questions Presented By Plaintiff's Claims
                 Were Not Complex or Novel.
2

3        Plaintiff's claims were straightforward breach of contract and employment claims.  These

4  types of claims are anything but novel and such claims are routinely adjudicated.

5        6.      The Sixth Factor Is Satisfied:  An Award Of Attorneys' Fees In This Case Will
                 Not Deter Plaintiffs With Sound Claims From Filing Lawsuits.
6

7        Defendants recognize that under the general "American rule," a party is not necessarily

8  entitled to its attorneys' fees simply because it was the prevailing party in a case.  *Fleischmann*

9  *Distilling Corp. v. Maier Brewing Corp.*, 386 U.S. 714 (1967); *Marcus v. Fox*, 150 Ariz. 333; 723

10  P.2d 682, 683 (Ariz. 1986).  However, the Arizona statute sets forth a clear exception to the

11  "American rule," and assessment of the statutory factors indicates this is precisely the type of

12  case for which an award would be justified.  Furthermore, a fee award in this case will not

13  discourage justified plaintiffs with tenable claims from bringing legitimate contract issues to

14  court.  Rather, a fee award will discourage this and other similarly-inclined plaintiffs from

15  bringing baseless claims – where they know they do not have compelling evidence to present,

16  have not fully investigated their claims in discovery or where they reject reasonable settlement

17  opportunities – and from attempting to bully defendants into submission with the mere threat that

18  Defendants will be made to spend thousands of dollars defending themselves in the course of the

19  litigation.

20  **B.      Chevron's Fee Request Is More Than Reasonable.**

21        Chevron requests attorneys' fees in the amount of $356,806.00 for the time expended

22  through trial and also requests attorneys' fees for the time expended in preparing this motion in

23  the amount of $17,580.00, for a total request of $374,386.00.  (*See* Moye Decl., ¶21, Liu Decl. ¶5,

24  Newsom Decl. ¶2)  Chevron therefore seeks fees for the three attorneys who participated in this

25  litigation (M.D. Moye, Dorothy S. Liu and S. Lanay Newsom) at the hourly rate billed to

26  Chevron for the entire litigation.  (Moye Decl. ¶¶ 13-19; Liu Decl. ¶¶ 5, 6; Newsom Decl. ¶¶ 2, 3)

27  In addition, Chevron seeks fees for the time spent by one of the lead legal assistants who assisted

28  during this trial, Naissa Foster.  (Moye Decl. ¶¶ 17, 18)  Such a request is more than reasonable

- 12 -

1 given the history of this litigation and the utter lack of merit to Plaintiff's claims.

2          1.     Chevron's Calculations For Lodestar Are Based On A Reasonable Number Of
3                 Hours Multiplied By Its Counsel's Hourly Rates.

4          The starting point for determining a reasonable fee is the "lodestar" figure, which is the

5 number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *See City*

6 *of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 433

7 (1983); *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App. 1983).

8 Defendants requests reasonable attorneys' fees for the time expended by its counsel throughout

9 this litigation.  Defendants therefore seek fees for the three attorneys and two paralegals who

10 participated in this litigation.

11         The following chart summarizes Chevron's fee request, as detailed in the accompanying

12 declarations of M.D. Moye, Dorothy S. Liu, and S. Lanay Newsom.[20]:

| **Attorneys** | **Hourly Rate** | **Hours Claimed** | **Lodestar** |
|---|---|---|---|
| M.D. Moye | $315.00 | 379.2 | $119,448.00 |
| Dorothy S. Liu | $265.00 | 691.6 | $183,274.00 |
| S. Lanay Newsom | $240.00 | 125 | $30,000.00 |
| **Legal Assistant** | **Hourly Rate** | **Hours Worked** | **Lodestar** |
| Naissa Foster | $135.00 | 172 | $23,220.00 |
| Mary A. Howell | $135.00 | 6.4 | $864.00 |
| **Total:** | | | **$356,806.00** |

21         A fee request must be evaluated by determining whether a reasonable attorney would have

22 believed the work to be reasonably expended in pursuit of success at the point in time when the

23 work was performed.  *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

24 To deny compensation, "it must appear that the time claimed is obviously and convincingly

25 excessive under the circumstances."  *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir.

---

[20] The tasks in this litigation included, but are not limited to, time spent on dispositive motions, discovery (written discovery, document production, depositions), discovery motions, trial preparation and trial (witness preparation, pre-trial and post-trial motions, trial attendance) and settlement efforts. *See* Moye Decl. ¶18, Ex. G.

1    1988); *see Wooldridge* 898 F.2d at 1176 n.14 (party opposing fee claim should demonstrate with

2    specificity that the hours or rates claimed are not reasonable).  Chevron's request is reasonable

3    and appropriate.  (Moye Decl. ¶20)

4         2.    Defendants' Request Is Premised Upon Reasonable Hourly Rates.

5         Moreover, Plaintiff cannot contest the reasonableness of Chevron's rates as the rates

6    charged by his own counsel significantly exceed those charged by defense counsel.  Plaintiff's

7    counsel's claimed billing rate, as he represented previously to this Court, is $375.00 per hour.

8    (Moye Decl. Ex. A, ("Admin. Filing, Ex. D"), Plaintiff's counsel's billing records) [21]  By contrast,

9    the hourly rate for Defendants' lead trial counsel from the inception of the case through trial was

10   $315.00 per hour, and the hourly rate for senior counsel through trial was $265.00 per hour.  As

11   detailed in the accompanying declarations, Chevron's counsel are experienced employment law

12   litigators specializing in management defense.  (Moye Decl. ¶¶ 13-15; Liu Decl. ¶5; Newsom

13   Decl. ¶2)  The rates charged by defense counsel in this matter are reasonable and, in fact, are on

14   the low end of the prevailing market rates for attorneys of like experience in the Bay Area.  *See*

15   *Bihun v. AT&T Info. Sys.*, 13 Cal.App.4th 976, 997 (1993) (affirming a fee award of $450 per

16   hour in a sexual harassment case); *Crommie v. Public Utilities Commission*, 840 F. Supp. 719

17   (N.D. Cal. 1994) (finding reasonable an hourly rate for lead trial counsel in an age discrimination

18   case for work performed in the 1992-1993 time frame was $300).  Clearly, the hourly rates

19   charged by Chevron's counsel are well within the prevailing market rates for attorneys of like

20   experience.

21   / / /

22   / / /

23   / / /

24   _____

25   [21]  Because of Plaintiff's filings during summary judgment proceedings, the Court issued an Order
     to Show Cause to Plaintiff.  In his response and related motion, Plaintiff's counsel submitted his
26   billing records and time entries, claiming that he incurred $88,000 in attorneys' fees for four
     months (February 2005 through June 1, 2005).  Plaintiff's counsel's Declaration in Support of
27   Administrative Motion for Order to File Defendant's Confidential Documents Under Seal is
     attached as Exhibit A to the Declaration of M.D. Moye.  By contrast, Defendants' fees for the
     same time period which included time expended by lead counsel, senior counsel and two
28   paralegals were approximately $50,000.

- 14 -

1

## V.   CONCLUSION

2        Based on the foregoing, Defendant respectfully requests that the Court grant its motion for

3    attorneys' fees expended throughout this litigation and in bringing this motion in the amount of

4    $374,386.00.

5

6    DATED:  May ____, 2006                     HANSON, BRIDGETT, MARCUS, VLAHOS &
                                                           RUDY, LLP
7

8
                                            By: _____/s/ M.D. Moye_____
9                                                        M. D. MOYE
                                                      DOROTHY S. LIU
10                                                  S. LANAY NEWSOM
                                                  Attorneys for Defendants
11                               Chevron-Texaco Corporation, Chevron U.S.A. Inc.,
                                        and Chevron Energy Solutions, L.P.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEYS' FEES;
MEMORANDUM OF POINTS AND AUTHORITIES  (NO. C 040790 JSW (EDL))

1254600.4